In the Matter of the Accounting of MELVILLE E. REGENSBURG et al., as Executors and Trustees under the Will of CARRIE AHRENS, Deceased.

Surrogate's Court, New York County, November 29, 1948.

*Vaughan & Lyons* for executors and trustees, petitioners.

*Otto A. Samuels* and *Ambrose V. McCall* for Ethel Ahrens, as general guardian of Jerome M. Ahrens, Jr., respondent.

*Arthur B. Hyman,* respondent in person.

*Alfred M. Lindau* for Sophy P. Regensburg and another, respondents.

*Joseph C. Slaughter* for Melville E. Regensburg and another, individually, and another, respondents.

*Uniacke & Kelley* for Mortimer Regensburg, as executor of Bellette Regensburg, deceased, respondent.

*Alexander Ackerson* for Catherine E. Piltz, as executrix of Jerome M. Ahrens, deceased, respondent.

*Carroad & Carroad* for Adele Regensburg, as executrix of Isaac Regensburg, deceased, respondent.

*Flora Regensburg,* as executrix of Jerome Regensburg, deceased, respondent in person.

DELEHANTY, S. The court has here for settlement the account of deceased's executors and trustees. Earlier proceedings in this estate resulted in denial of an application to compel an account. On appeal (*Matter of Ahrens,* 272 App. Div. 472) direction was given " that the proceedings be remitted to the Surrogate's Court of New York County to conduct an accounting, obtain jurisdiction therein of all parties as may be necessary and take proof for the purpose of determining

the amount " of certain credits in respect of certain shares of stock which in the order of reversal were directed to be restored to the trust fund " subject to a lien and credit, to those entitled thereto, for all monies actually paid " under a certain agreement. In the earlier proceeding the *sole* party petitioner was the general guardian of an infant. The *sole* parties respondent were the executors and trustees of deceased. In the current proceeding the petitioners for settlement of their account are the executors and trustees under the will of deceased and the respondents are twelve in number including the infant who, through his guardian, was the petitioner in the original proceeding.

Motions made during the pendency of this accounting proceeding by the attorney for the executrix of Jerome M. Ahrens, Sr., and a comment during the hearing made by counsel for the infant, Jerome M. Ahrens, Jr., who through his general guardian is an objectant here, present a fundamental question which must first be answered. That question concerns the effect to be given to the order which directed an account and which included certain specific requirements in respect of the form of the account and gave certain specific directions as to action to be taken on the account. The representative of the estate of the now deceased Jerome M. Ahrens, Sr., says that giving effect to the order beyond its effect in requiring an accounting would violate the fundamental rights of his client. By formal written motion he stated his legal position and thereafter at the opening of the trial in the accounting proceeding made various oral motions in support of his position which fundamentally is that he and his client are not bound by any action heretofore taken except to the extent of being bound on proper citation to attend on this accounting. His position is that no further effect can be given to any action taken in the prior proceeding without infringing upon rights guaranteed to his client by the Constitution. The comment made by counsel for the objectant indicates that he has proceeded on the assumption that this court is without power to make an independent decision on the merits on the record now before it. He, in effect, says that the court is constrained to make only one decision in the case and that, in his client's favor. Thereby he emphasizes the fear underlying the motions of the representatives of the estate of Jerome M. Ahrens, Sr., and seems to suggest that such estate must be deprived of an uninfluenced decision on the facts because of matters occurring in a proceeding to which that estate was not a party. Objectant's counsel does not take the formal position that the parties to this present

record are bound by the prior happenings in the proceeding to which they were not parties, but he suggests that the " law of the case " has been " settled " and though " settled " in the absence of the other parties, they are to have no right to contend for a decision on the merits on any basis other than the " law of the case " so settled in their absence.

The fears of the representative of the estate of Jerome Ahrens, Sr., are groundless. The proceedings taken in the absence of his client have no effect upon his client's rights. An adjudication is binding only on parties or their privies. Since neither Jerome Ahrens, Sr., nor his estate had anything to do with the prior proceedings they are not bound by any happening therein. In any event and even as to parties who were heard *res judicata* may not be urged where the judgment is not a final judgment. (Restatement, Judgments, § 41.) The rule is stated in *Bannon* v. *Bannon* (270 N. Y. 484, 489). There the Court of Appeals said: " This court has said that it is ' only a final judgment upon the merits, which prevents further contest upon the same issue, and becomes evidence in another action between the same parties or their privies. Until final judgment is reached the proceedings are subject to change and modification; are imperfect, and inchoate, and can avail nothing as a bar, or as evidence, until the judgment, with its verity as a record, settles finally and conclusively the questions at issue. An interlocutory order is not such a judgment. It is not a judgment at all.' (*Webb* v. *Buckelew*, 82 N. Y. 555, 560. Cf. *Rudd* v. *Cornell*, 171 N. Y. 114; *Brown* v. *Cleveland Trust Co.*, 233 N. Y. 399; 2 Black on The Law of Judgments [2d ed.], § 509.) "

The suggestion by counsel for the present objectant (the former petitioner for the order to account) that " the law of the case " has been settled is equally without basis. The " law " of the case could not be settled against interested parties without giving them a hearing. The law of a case discussed on one set of facts is not applicable to a different set of facts. But a more fundamental reason exists here for denying validity to the suggestion made by objectant's counsel. What he calls the " law " of the case is nothing more in fact than a decision on the facts as they appeared in the record of the former proceeding. There is no " law " in this case that is distinguishable from a factual finding. If the parties now before the court are to have a fair trial they must have a decision by the trial court which represents that court's findings on the *present* record. If less were accorded them they would in truth be deprived of their consti-

tutional rights. It follows that for reasons fundamental to a fair trial this court must on this record made by and on behalf of *all* the parties to it determine the right and justice of the cause *on this record alone.*

The primary fact question to be determined is whether or not the fiduciaries of deceased exercised the fiduciary power granted to them and terminated the trust created by deceased's will. The fiduciaries had the power so to act. To say that having the power they could not exercise it is to say that the will of deceased must be aborted. That is not a permissible basis for decision. These fiduciaries were selected by deceased and the court must respect her selection (*Matter of Leland,* 219 N. Y. 387, 393). Everything now urged in limitation on their freedom of conduct as fiduciaries was existent before the will of deceased became operative. The selection of the fiduciaries was made by deceased with knowledge of their personal interests and of their status in the corporation whose shares were the chief asset of deceased's estate. They and they alone were granted the discretion to terminate the trust. This court does not now possess and never has possessed such power. It is incapable of exercising any discretion because none was committed to it. The court can do no more than ascertain whether the fiduciary discretion granted to the fiduciaries was in fact exercised by them. If it finds that it was so exercised within the framework of the will then this court must obey the mandate of deceased's will and effectuate the consequences of such exercise of discretion.

The court now turns to the record upon which it must make its decision. That record establishes that the will of deceased was drawn against a background of the matrimonial difficulties of her son who obviously was the chief object of her donative intentions. It is clear that the trust provisions and the authority to the trustees to terminate the trust in their discretion were all part of a program which deceased understood would aid her son in his matrimonial difficulties and when these were solved, would permit her son to enjoy his patrimony as she really intended that he should enjoy it. The trustees were obliged to take this background into account just as they were obliged to take into account the request of the beneficiary for the termination of the trust and to take into account the effect on the remainderman's interest of a termination of the trust. When they undertook to act as fiduciaries they could not disassociate themselves from their own personalities and were not required to do so. They and they alone had been chosen by deceased to exercise discretion in respect of action which would give her son the property which

the will envisaged that in some circumstance he would possess. The background now emphasized by objectant is not a new thing. It was not new to deceased. Its existence was entirely consistent with her plan. The now completed story of the manner in which the son of deceased pressed the trustees makes it clear that he was seeking what he conceived to be his rights under his mother's testamentary plan and that he was seeking such rights in his own behalf and for his own purposes. There is no basis at all for saying that he was serving the purposes of the trustees or that he was disregarding the interests of his own son. He did not destroy any value that was in the shares by taking them in the manner in which he did. It was not until the shares had actually been sold that any effective personal benefit to deceased's fiduciaries could be realized. The sale plainly had nothing to do with such benefit. It was dictated solely by the necessities of deceased's son. The whole basis to the position taken by the guardian of the infant presupposes no right on the part of the trustees to give or on the part of the son of deceased to take his patrimony on terms acceptable to him. What the guardian says in effect is that no terms could have been acceptable and that no basis for action could be validated unless the remainder interest of the infant was preserved and protected. That position contradicts the express terms of the will. Even if such a concept of the position of the guardian goes beyond the guardian's contentions, as they are phrased, it does not go beyond the spirit of her contentions because what she has said from the beginning is that no transfer to the son of deceased by these trustees could escape taint because (as she argues) these trustees could not make an untainted decision. Such argument in the last analysis is a denial to the fiduciaries of the right to exercise the powers conferred by deceased on them. Only by such an argument and by successfully maintaining such a position can the guardian sustain the burden of proof which is hers to show that this trust was not terminated validly. She argues from the fact of the ultimate sale by the son that every intermediate step was a wrong to the infant. But it cannot be denied that the beneficial owner of the shares was always able, on appropriate appeal to a court, to enforce every right which inhered in the shares and that until the sale such rights had not passed beneficially from deceased's son. The only valid conclusion on the facts so far as the sale is concerned is that it was made by the son for his own purposes and on terms which realized the actual value in the shares.

The conclusions which the court has drawn on this record respecting the exercise of the power to terminate the trust require that the objections of the general guardian be overruled — basically because objectant has no interest in the fund. Dealing with the objections seriatim the court holds that objection 1 falls because of this ruling. Objection 2 falls also because there is before the court no application for allowance. Objections 3 through 6 fall because of the holding by the court that the trust was validly terminated. Objection 7 raises no fact issue which requires determination. Objection 8 falls because of the major determination made by the court. However, the court should comment that the claimed payments were made and that the assignments claimed were validly executed. Objection 9 is overruled because the transactions to which that objection is addressed are not shown to have operated to the prejudice of objectant. Objection 10 is overruled on the major ground already stated.

Submit, on notice, decree settling the account accordingly.