George Fraukeitthaleb, S.
Testator’s widow, the residuary legatee under his will, instituted this proceeding to revoke the letters testamentary, to restrain the executor from disposing of certain corporate stock and to obtain the issuance to the petitioner of letters of administration with the will annexed. The hub of the controversy is an agreement, entered into between deceased and his brother, providing for the acquisition by the survivor of them of all the shares of stock of a jointly controlled corporation. This agreement provided, in effect, that upon the death of either brother the survivor might elect to purchase the interest of his deceased brother by payment of one half of the corporation’s net worth as computed, in accordance with a method fixed in the agreement, by Samuel Siegel, the accountant for the corporation. The agreement prescribed that the report of net worth be made within 30 days following the death of the deceased and that the survivor exercise his option to purchase within 30 days following the receipt of such repoi't.
Testator died in September, 1949 survived by his brother. Deceased’s will nominated his brother and Samuel Siegel as executors but the brother renounced the appointment and Siegel qualified as sole executor. Following deceased’s death a report of net worth was prepared by Siegel and thereafter the brother exercised his option to acquire complete control of the corporation.
Early in the affairs of the estate discord arose among persons who are parties herein. The petitioner insisted that her personal counsel be retained as the estate attorney. At one point the executor appeared to acquiesce in this designation but either reconsideration or growing divergencies between the executor and the petitioner prevented any ultimate agreement on this matter. The designation of his attorney was the personal privilege of the executor. Even a testator lacks the power to select the attorney to represent a fiduciary. (Matter *733 of Caldwell, 188 N. Y. 115; Matter of Roth, 291 N. Y. 1, 5.) It was apparent that one attorney could not represent with propriety both the seller and the purchaser of an estate asset. Equally cogent reasons could exist for the executor’s rejection of counsel who also represented a single beneficiary under the will. The refusal of the executor to retain counsel selected by the petitioner does not give her cause for complaint.
Petitioner has not attempted to sustain either her allegation that the agreement between deceased and his brother was invalid as an ineffectual testamentary disposition (cf. McCarthy v. Pieret, 281 N. Y. 407) or her allegation that the executor was duty bound to attack the agreement’s validity. Nor has petitioner established the agreement to be invalid for any other reason. The court finds that the agreement constituted a binding and enforcible contract at deceased’s death (Chase Nat. Bank v. Manufacturers Trust Co., 265 App. Div. 406; Matter of Gilbert, N. Y. L. J., June 28, 1946, p. 2547, col. 7). The difficulties between the parties to this proceeding arose in connection with the performance of the terms of the contract following deceased’s death and the position now taken by petitioner at the conclusion of the hearing is premised upon the agreement’s validity and claimed breaches of its provisions by the executor. The charge is made by petitioner that the executor’s acts were fraudulent, dishonest, wasteful and in violation of his trust duties. The proof does not sustain this charge. The evidence was not sufficient to warrant a finding that the executor’s report on the corporation’s worth was made later than 30 days after deceased’s death and was predated to represent falsely a compliance with the contract, but, in any event, it is not apparent that any delay in the delivery of the report worked to the prejudice of the estate. A delay in the preparation and delivery of the report might have given the prospective purchaser of the stock an excuse to avoid the contract and particularly the provisions thereof to be operative in the alternative that the option to purchase was not exercised. The fact is that the purchaser did not assert that the report was delayed and made no attempt to disavow the agreement for any reason, but, instead, complied with the contract requirements by exercising his option within 60 days of deceased’s death. In these circumstances it cannot be said that the executor’s report was delayed through collusion between the executor and the purchaser in order to permit the latter to claim a breach of the agreement. Certainly the estate could not avoid an unfavorable sale by deliberate delay on the part of the executor. If there was delay, and there appears to have been none, it did not prejudice the estate.
*734 Petitioner asserts that the conduct of the executor in assessing the worth of the corporation is censurable. The pleadings do not present an issue as to the corporation’s value. The petitioner states in her memoranda that she does not request the court to determine the net worth of the corporation and that she made no attempt herein to fix that figure and presently is not prepared to do so. In this proceeding the court will determine only the issues presented by the pleadings and tried by the parties (Matter of Goebel, 263 App. Div. 516; Pattison v. Pattison, 301 N. Y. 65, 68). Any questions as to whether or not the executor may be surchargeable for failure to obtain proper consideration for the corporation stock and the amount of any surcharge may be raised in an accounting proceeding where all interested parties and creditors are before the court upon adequate notice as to the relief sought and available in such a proceeding. The issue now before the court pertains to the removal of the executor.
Following the executor’s appraisal of the corporation’s worth, he obtained, at his own expense, an appraisal by a competent disinterested firm of accountants. The executor may have been prompted to procure this independent appraisal by the critical attitude of petitioner, but nevertheless his doing so was voluntary and commendable. The later valuation was in an amount in excess of that fixed by the executor. The opinions of the parties differ as to whether this difference is attributable to error, distinctions in accounting practices or bad faith. The court finds that the executor did not act in bad faith and that his conduct in this regard does not constitute basis for his removal. This ruling does not exonerate him from responsibility for any omission, mistake, negligence or other act, if any, that may have occasioned pecuniary loss to the estate.
The court also finds that there is not such a conflict of interest as to justify removal of the executor. The executor was selected by the testator not only as a fiduciary but as the person to compute the valuation of the corporate stock. This designation by the testator is of significant importance and must be respected by the court (Matter of Leland, 219 N. Y. 387; Matter of Flood, 236 N. Y. 408; Matter of Ahrens, 193 Misc. 844, 848; Matter of Forte, 149 Misc. 327). Under the inter vivos agreement, the executor, individually, is the escrowee of the corporate stock until the purchase price shall have been fully paid. Certainly this arrangement does not place the estate in a weaker position than it would be were a third person the escrowee. The executor has been the accountant for the corporation. If he continues in this professional capacity it will afford him an intimate knowledge of the *735 corporation’s financial condition at all times. As accountant, the executor will receive compensation from the corporation for services but he will not be controlling the administration of the corporation and he will not be required to exercise any discretion in the corporation’s management to the detriment of the estate. It will be to the advantage of both the estate and deceased’s brother that the corporation prosper. This situation in which the executor finds himself is one of which the testator was not unaware and it can be said that he contemplated it and created it. The position of the executor as accountant for the corporation does not here create an objectionable condition (Matter of Block, 186 Misc. 945; Matter of Gerbereux, 148 Misc. 461; Matter of Berri, 130 Misc. 527).
The injunctive relief sought by the petitioner is denied. The duty of the executor to obtain the proper price for the corporation stock, within the terms of the agreement, is clear.
The petition is dismissed. Submit decree on notice.