In the Matter of the Accounting of CATHERINE E. HAMMER, as Executrix of GEORGE A. HAMMER, Deceased. GIRARD TRUST CORN EXCHANGE BANK, Appellant; CATHERINE E. HAMMER, as Executrix of GEORGE A. HAMMER, Deceased, Respondent.

First Department, March 22, 1962.

*Herbert M. Wachtell* of counsel (*Jaffe & Wachtell,* attorneys), for appellant.

*Ernest E. L. Hammer* (*Albert A. Beregh* with him on the brief), attorney for respondent.

*Per Curiam.* At the request of deceased, respondent bank gave a line of credit to Cement Enamel of Delaware and Pennsylvania, Inc. This corporation has as its chief stockholder the father-in-law of deceased's son. Deceased guaranteed the line of credit to the extent of $10,000. The instrument of guarantee provided that upon any default by the corporate principal the bank could forthwith recover from the deceased. Deceased further waived notice of any loan or default. There is no dispute but that the principal was in default of a debt in excess of the sum guaranteed and that the respondent bank has made timely claim against the estate. The claim was rejected by the executrix, and later the executrix' intermediate account rejecting the claim was approved by the Surrogate. The decree so ordering is the subject of this appeal.

It appears that prior to the execution of the guarantee deceased executed a deed of trust to the respondent as trustee, and respondent received the corpus of the trust. The trust is also the residuary beneficiary of the estate. The bank was also named coexecutor of the will but declined to qualify. The basis of the rejection of the claim is that the bank in acting both as trustee and lender was subject to a divided loyalty which prevents it from recovering against the estate.

We find that these facts do not present a picture of divided loyalty even under the high standards set up in *Meinhard* v. *Salmon* (249 N. Y. 458). The deceased was not prevented by virtue of the trust from entering into the agreement of suretyship with the bank (*Matter of Balfe,* 245 App. Div. 22). And the Surrogate so found. In fact, the Surrogate found that the estate would have been liable to the bank for the indebtedness at the time of deceased's death. The Surrogate found, however, that the estate was discharged because the bank took a note from the debtor in the amount of this indebtedness after the deceased's death. Whatever might have been the effect of this transaction if the note extended the debtor's time for payment need not be considered. The note was a demand note and its effect was merely, as between the debtor and the bank, to facilitate proof of the indebtedness. It neither changed the loan nor extended its time.

The determination of the Surrogate is not precisely the position taken by the estate. The latter urged that it was the duty

of the bank to pursue the creditor and the liability of the estate could only mature when and if it appeared that the creditor was unable to respond, and then to the extent that the creditor did not pay. The deliberate failure of the bank to institute suit was further urged as a discharge. This overlooks the express terms of the suretyship agreement to the contrary. It cannot be urged that the bank's acceptance of the trust waived these provisions, because the deceased incorporated these provisions with full knowledge of the existence of the trust (*Matter of Dow*, 3 A D 2d 968, affg. 32 Misc 2d 415, affd. 5 N Y 2d 739; *Matter of Sherman*, 9 Misc 2d 731, affd. 279 App. Div. 981).

Admittedly Pennsylvania law governs this situation. The Surrogate did not rely on any difference between the law of the sister State and our own on any phase of the matter, and in this we agree.

The decree voiding the claim of appellant should be reversed on the facts and the law and the claim allowed, with costs.

BERGAN, J. (dissenting). When the settlor of a trust gives it knowingly into the trusteeship of one having interests which conflict with the ends of the trust, the conflict does not itself, of course, result in a breach of the fiduciary duty which usually would follow automatically as it was held in *Matter of Balfe* (245 App. Div. 22). But this is not to say that the trustee has no fiduciary obligations; that the trustee may pursue its own best interests even though the interests of the trust suffer; nor does it mean that the trustee may exercise every technical legal right it has in all respects as though it had no higher obligation to guard and protect.

The trustee takes such an obligation with knowledge of the conflict and it ought in good faith first to honor its trust obligation and next to protect itself. Nothing in the discussion of "honesty and good faith" by CARSWELL, J., in *Matter of Balfe* would suggest that the court should uniformly and as a consistent rule of law sanction a course of conduct by a trustee under a permissible condition of divided loyalty to help itself first and think about the trust later.

Here the trustee refused an altogether reasonable request by the executrix to exhaust remedies against its prime debtor before making claim against the estate, the residuary of which it was bound in good faith to protect. If such remedy, pursued with diligence against the debtor had failed, the present remedy would exist; but the estate was treated by the bank as it might treat any stranger who had bound himself to secure a third party's obligation to the bank. The trustee had a minimal

obligation at least higher than this. (*Meinhard* v. *Salmon*, 249 N. Y. 458; *City Bank Farmers Trust Co.* v. *Cannon*, 291 N. Y. 125.) I would affirm the Surrogate's decree.

BREITEL, J. P., EAGER and STEUER, JJ., concur in *Per Curiam* opinion; BERGAN, J., dissents in opinion in which MCNALLY, J., concurs.

Decree voiding the claim of appellant reversed on the facts and the law and the claim allowed, with costs. Settle order on notice.