(36 South. 826.)

No. 15,060.

SMITH v. VICKSBURG, S. & P. RY. CO.*

(March 28, 1904.)

ATTORNEY AND CLIENT—COMPROMISE OF SUIT —RIGHTS OF PARTIES.

1. Attorneys had rendered a valuable service to their client, and as between them and their client the latter had no right to enter into compromise of the litigation without consulting them.

2. The defendant in the suit was in a different position. It brought no influence to bear toward taking an undue advantage. The client made application for compromise, which was after some time agreed upon and effected.

3. Attorneys have no lien for their fees prior to judgment.

4. This case is different, as relates to improper influence, from the Lampkin Suit in 8 South. 530, 42 La. Ann. 997; and, as relates to the "particular lien" or "charging lien" of the common law, it is not similar to the case reported in 6 South. 508, 41 La. Ann. 355.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Alfred Dillingham Land, Judge.

Action by Thomas Smith against the Vicksburg, Shreveport & Pacific Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Thomas Charles Barret, Edgar Williamson Sutherlin, and William Pike Hall, for appel-

---

*Rehearing denied June 6, 1904.

lant. Wise, Randolph & Rendall, for appellee.

BREAUX, J. The attorneys of the plaintiff attack a compromise entered into by the plaintiff with the defendant company on the ground that it was made in bad faith, and by collusion with the plaintiff, and without their knowledge or consent.

The plaintiff was one of defendant's laborers, and, while at work for defendant, he, in an accident, lost both his legs, through, as he charged, the default and negligence of the defendant.

A short time after the accident, while confined by his wounds at the hospital, he employed Holbert and Barret as attorneys to institute a suit for damages, and signed a contract with them regarding their fee, and gave them the exclusive right to compromise.

Mr. Holbert, of the firm, died. A new contract was drawn, setting forth the fee. Mr. Barret associated Sutherlin and Hall with him in the case. They, a short time afterward, brought suit for plaintiff for $20,000. The first contract of employment was served upon the defendant prior to the compromise. The second contract was not served, but it must have been known that they were plaintiff's attorneys, as their names were signed to the petition served on the defendant.

This suit was filed on the 20th day of November, 1902, and on the following January the defendant appeared through counsel, and answered, setting up a general denial and the plea of contributory negligence.

On a day of May following, the defendant produced a written agreement of compromise with plaintiff, dated the 9th of April preceding, and filed a plea therewith, in which it alleged that plaintiff had voluntarily entered into this compromise for the settling of the suit, and he received in settlement and compromise the sum of $1,200 in cash, and executed a receipt acquitting defendant com-

pany of all claims for the injuries he sustained in the accident mentioned above.

The attorneys of record moved to set aside this compromise, and stated the facts showing good cause of complaint, as we think. As to whether it is sufficient in law to enable them to recover is a question that will receive careful consideration later in our decision.

They specially charge in their motion that defendant had entered into this compromise with an ignorant, illiterate, helpless negro at his home in Mississippi, who was in bad health; and that it was a fraud upon these attorneys and the profession to which they belong, and should not receive the approval of the courts, and that it should be annulled and set aside in whole or in so far as the attorneys are concerned.

They averred that the sum paid him was an insignificant amount for the injuries suffered by him, and tendered the amount paid him in open court, and asked the court to revoke and set aside the compromise, and prosecute the case to judgment.

We should have before mentioned that this motion to set aside the compromise was filed in the name of plaintiff and in his behalf; that, in addition, the attorneys before named joined in that motion, and specifically alleged therein, in so far as they were concerned, in substance as just stated.

The act of compromise shows that it was signed in the presence of a merchant and planter on whose land plaintiff lived. The testimony showed that this planter and merchant had taken an active part in bringing about the compromise, although he knew that the claim was in the hands of attorneys, who had not been advised with in the premises. There is no question but that it was the intention of plaintiff, when he entered into a contract with his attorneys, to let them have exclusive control of the proceedings. It is also in evidence that plaintiff, Smith, afterward took the initiative steps toward bring-

ing about the compromise, and that defendant's agents were not at first favorable to a compromise. It also appears from the testimony that the attorneys were to be paid a contingent fee out of the amount recovered, and that the percentage at which the fee was fixed was the customary fee for lawyers to take damage suits in Shreveport. On the day that the compromise in question was signed the plaintiff wrote to Holbert and Barret, revoking the "power of attorney vested in said firm or either of its members." The plaintiff does not complain of the compromise settlement, and personally does not appear to have joined in the motion to set aside the compromise.

The judge of the district court decided that counsel for plaintiff have no lien for their fees on the cause of action, and that counsel's contract with plaintiff does not secure to them an interest in the litigation; "that an attorney cannot lawfully purchase a litigious right" (Civ. Code, art. 2447); hence an attorney cannot acquire a vested interest in a pending suit, and decided against the attorneys. Counsel concede that a right to damages for personal injury is not assignable, but controvert the proposition of the district court "that the attorney had no lien."

The right to compromise the case vel non presents the question at issue.

As between plaintiff and his attorneys, plaintiff had no such right. It was the stipulation expressed in the first contract, and, even if not expressed in the second, it was its spirit and intention. Plaintiff had no right to bring the employment to a premature end by a compromise with defendant. This was exceedingly improper treatment, which the attorneys did not deserve, as they had served him faithfully; a fact, if known to the planter and merchant before referred to, would perhaps have deterred him from taking an active part in matter of this compromise. As relates to plaintiff, it was an unauthorized compromise, which no client

should think of making without first advising with his attorney to whom he has promised to pay a part of 'the damages in satisfaction of his services. Plaintiff had been benefited by the suit, and would not, in all probability, have been heard as an applicant for a compromise if no suit had been brought.

The defendant's case is different. It was under no contractual obligation to plaintiff's attorneys and owed them no duty.

"Parties to a lawsuit may settle and compromise their litigation without consulting their counsel, and, in the absence of a statute giving an attorney a lien for his fees, courts will not intervene, unless there has been collusion between the parties, and an attempt to defraud an attorney out of his fees." Weeks on Attorney at Law, p. 477.

The charge of collusion and fraud is not sustained as to defendant. The testimony does not disclose that through its claim agent, or any one else, influence was brought to bear that resulted in a compromise. Defendant's agents did not seek him. He sought them through the offices of a merchant and planter who interested himself in his behalf, without, as he testified, receiving any reward of any kind.

The facts are different from what they were in the Lampkin Case, 42 La. Ann. 997, 8 South. 530, in which the court held that "undue influence" had been "exercised upon, and an unjust advantage taken of, the plaintiff, an ignorant, weak-minded, and suffering negro, by the astute agent of the defendant, who, though advised that the plaintiff's interest was under the protection of competent counsel, in whose favor he had renounced the power of compromise, avoided the counsel, and sought the plaintiff in the seclusion of his sick room, and by working on his credulity and his fears extorted his consent to an unconscionable bargain." The record here does not disclose that plaintiff was in a suffering condition in a sick room, or that there was anything of the sort in the cited case.

We have before stated that there were two contracts of employment signed by plaintiff. One was signed prior to the death of the member of the law firm employed (that is, prior to the death of the late Mr. Holbert), and the other after his death. The last was served on the defendant, and not the first. In the last contract nothing was stated about giving to the attorneys the exclusive right to compromise the case. The copy of the contract served on defendant is absolutely silent upon the subject.

Defendant is to be considered as any other third person not prohibited by law from entering into a compromise with its creditors. The moral side of the question is not before us, nor the consideration of that which a careful business man, anxious to see that every one receive his own, would have done under similar circumstances. But this does not create a legal tie between the attorneys here and the defendant company.

We limit our decision, as relates to the compromise, strictly to the fact that the defendant had not been notified that plaintiff has transferred to his attorneys all his rights to enter into a compromise.

Each case must stand on its own facts. What would be the result if a debtor were informed that such a right had been granted is not before us for decision. Such information or knowledge of transfer conveyed to the debtor who makes a compromise with his creditor presents an issue not before us.

We have heretofore considered the compromise from the point of view of fraud or undue advantage charged, and have not taken the attorneys' lien into account. The case here, as to lien vel non, was not within the terms of the statute, as no judgment had yet been obtained. Rev. St. § 128. "No attorney's lien could be held to have been destroyed prior to judgment." There is no question here of the "charging lien" or the "particular lien" as treated by Weeks' Attorney at Law, § 369, and the discussion of

the court in the Foreman Case, 41 La. Ann. 355, 6 South. 508, upon the subject, has no bearing except as between client and attorney, and does not extend to others, except perhaps where there is on the part of defendant an attempt at defrauding, which we have not found to be the case here, and therefore we are relieved from the necessity of deciding that question.

Quoting again from the same commentator:

"In some states the lien is regulated by statute. In others the lien is totally denied, but the lawyer has a right to deduct from funds in his hands." Section 370.

In this state the lien is regulated by statute. We do not think we should extend the scope and effect of the statute in order to recognize a lien not embraced in its terms. It is thus limited in the state where statutes regulate this lien. To show this we quote from the same commentator:

"The lien has been held to attach on sums received or payable by way of compromise to the client in a cause, even where the verdict and judgment are against him; for the money is regarded as the fruit of the attorney's labor and skill, especially if he has taken up the cause of a poor person." Section 370.

Construction can be extended, perhaps, in other jurisdictions, so as to recognize a lien on the amount realized on an adverse (although not final) judgment, as the amount may, by construction, be considered to have been realized on the judgment, but not in this state, in which the final judgment is made the sine qua non of the lien for services.

The question is not entirely new in this state. After the statute cited supra had been enacted, a case very similar was decided. The court said:

"We know of no law giving an attorney at law a privilege on a judgment not yet in existence, and no law to compel a party to prosecute a suit to a judgment in order that the attorney in the suit may obtain and enforce a privilege on the said judgment for his professional services. The plaintiffs having compromised their suit against the defendants (which they had a right to do) and demanded its dismissal, it was at an end, and there is no suit in which an intervention can be maintained." Rind et al. v. Hunsicker et al., 24 La. Ann. 572.

Recurring to the 41 La. Ann., 6 South., case (the Foreman Case) cited supra, we desire to state that the court clearly lays it down that "respondent" has a lien on the funds in his hands for his disbursement and professional fees.

But the right to retain an amount is different from the right to require of the debtor that he in regular course of business, before payment of an amount agreed upon to his creditor, shall require evidence that his creditor has the assent of his attorney, or that the alleged debtor in good faith cannot compromise a claim held against him.

Attorneys are the counselors of the court. They have a right to compensation. Any act done which results in loss of their fees should not receive the approval of any one, and it certainly does not receive ours.

At the same time we do not see our way clear to holding that this defendant, not shown to have intended to defraud, can be held further, when it has paid to one claiming to be its creditor an amount which this creditor was not only willing, but anxious, to accept.

For reasons assigned, the judgment appealed from is affirmed.

LAND, J., recused, having presided in the court below.