574 So.2d 348 (1991)
SUCCESSION OF Charles Wrennon WALLACE.
No. 90-CC-0159.
Supreme Court of Louisiana.
January 22, 1991.
*349 Garland R. Rolling, Metairie, for Ruth B. Wallace, applicant.
Jacqueline M. Goldberg in pro. per.
Max Nathan, Jr., New Orleans, for respondent.
DENNIS, Justice.[*]
An attorney disciplinary rule of this court provides that an attorney representing a client in any matter is required to withdraw from employment if he is discharged by his client. Rules of Professional Conduct, Rule 1.16(a)(3). The state constitutional question presented by this case is whether the legislature by the enactment of La.R.S. 9:2448 may validly supersede or amend this court's attorney disciplinary rule to provide that an executor of an estate may discharge the attorney designated in the testator's will "only for just cause."
The testator, Charles Wrennon Wallace, died March 9, 1981 leaving a statutory will in which he appointed his wife, Ruth Pearl Brink Wallace, executrix of his estate, and Jacqueline Mae Goldberg, attorney to act for the executrix and the estate. Mrs. Wallace filed a petition to probate the will. Subsequently Mrs. Wallace filed a rule to show cause why La.R.S. 9:2448 should not be declared unconstitutional, as being in conflict with this court's rules adopted pursuant to its inherent judicial power, and why she should not be able to discharge the attorney designated in the testator's will and employ an attorney of her choice to assist her in administering the succession. The district court denied the executrix relief and the court of appeal refused to exercise its supervisory jurisdiction. We granted certiorari to decide whether the statute in question is unconstitutional because it conflicts with a valid rule of this court regulating the professional conduct of attorneys and their relationships with their clients and the courts.

*350 1. This Court's Responsibility and Power
This court has exclusive and plenary power to define and regulate all facets of the practice of law, including the admission of attorneys to the bar, the professional responsibility and conduct of lawyers, the discipline, suspension and disbarment of lawyers, and the client-attorney relationship. LSBA v. Edwins, 540 So.2d 294 (La.1989); Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102, 109, 115 (La. 1979); LSBA v. Connolly, 201 La. 342, 9 So.2d 582 (1942); Ex Parte Steckler, 179 La. 410, 154 So. 41 (1934); Meunier v. Bernich, 170 So. 567 (La.App.1936). The sources of this power are this court's inherent judicial power emanating from the constitutional separation of powers, La.Const. 1974, Art. II; Saucier v. Hayes Dairy Products, Inc., supra; Ex Parte Steckler, supra; Meunier v. Bernich, supra, the traditional inherent and essential function of attorneys as officers of the courts, Ex Parte Steckler, supra; Meunier v. Bernich, supra; and this court's exclusive original jurisdiction of attorney disciplinary proceedings. La. Const.1974, Art. V, § 5(B); Saucier v. Hayes Dairy Products, Inc., supra. The standards governing the conduct of attorneys by rules of this court unquestionably have the force and effect of substantive law. Succession of Cloud, 530 So.2d 1146 (La.1988); Succession of Boyenga, 437 So.2d 260 (La. 1983); Leenerts Farm, Inc. v. Rogers, 421 So.2d 216 (La. 1982); Singer, Hunter, Levine, Seeman & Stuart v. LSBA 378 So.2d 423, 426 (La. 1979); Saucier v. Hayes Dairy Products, Inc., supra; LSBA v. Connolly, supra; Ex Parte Steckler, supra.
Conversely, the legislature cannot enact laws defining or regulating the practice of law in any aspect without this court's approval or acquiescence because that power properly belongs to this court and is reserved for it by the constitutional separation of powers. La. Const.1974, Art. II. Accordingly, a legislative act purporting to regulate the practice of law has commendatory effect only until it is approved by this court as a provision in aid of its inherent judicial power. This court will ratify legislative acts that are useful or necessary to the exercise of its inherent judicial power, but it will strike down statutes which tend to impede or frustrate its authority. Saucier v. Hayes Dairy Products, Inc., supra at 115; Meunier v. Bernich, supra; Ex Parte Steckler, supra at 45; LSBA v. Connolly, supra 9 So.2d at 586; Singer, Hunter, Levine, Seeman & Stuart v. LSBA, supra at 425.
The people's constitutional reposition of power carries with it a mandate for the full and responsible use of that power. See, e.g., American Trial Lawyers v. New Jersey Sup.Ct., 66 N.J. 258, 330 A.2d 350 (1974). Consequently, this court has not only the power but also the responsibility to regulate the practice of law in this state. LSBA v. Dumaine, 550 So.2d 1197, 1200 (La.1989); Saucier v. Hayes Dairy Products, Inc., supra; Succession of Boyenga, supra; LSBA v. Edwins, 329 So.2d 437 (La. 1976). Accordingly, this court has not hesitated to meet its judicial responsibility for the use of the inherent judicial power and original attorney disciplinary jurisdiction vested in it by the constitution.[1]
*351 In defining and regulating the client-attorney relationship this court has adopted a number of interrelated rules as part of the Code of Professional Responsibility. Respecting legal fees the code provides that a lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee. Rules of Professional Conduct, Rule 1.5. A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned. Rules of Professional Conduct, Rule 1.16(d). A lawyer representing a client in any matter is required to withdraw from employment if he is discharged by his client. Rules of Professional Conduct, Rule 1.16(a)(3). Except with consent of his client, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interest. Rules of Professional Conduct, Rule 1.7. A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except for a lien granted by law to secure his fee or expenses or a reasonable contingent fee contract in a civil case. Rules of Professional Conduct, Rule 1.8(j). A lawyer shall refuse to accept or continue employment if the interests of another client may impair the independent professional judgment of the lawyer. Rules of Professional Conduct, Rule 1.7.
These rules are designed to give the client the right to control and direct the assertion and protection of his legal rights as fully as practicable, and to encourage and require an attorney to act with loyalty and in the best interest of his client. Rule 1.3, Comment [1] ("A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer"); Rule 1.4, Comment [1] ("Even when a client delegates authority to the lawyer, the client should be kept advised of the status of the matter."); Rule 1.7, Comment [1] ("loyalty is an essential element in the lawyer's relationship to a client."); Rule 1.7, Comment [6] ("The lawyer's own interest should not be permitted to have an adverse effect on representation of a client."); Rule 1.8, Comment [1] ("... all transactions between client and lawyer should be fair and reasonable to the client."); Rule 2.1, Comment [1] ("A client is entitled to straightforward advice expressing the lawyer's honest assessment."); Rule 7.3, Comment [1] ("There is potential for abuse inherent in direct solicitation by a lawyer ... [a] prospective client often feels overwhelmed by a situation giving rise to the need of legal services, and may have an impaired capacity for reason, judgment and protective self-interest.").

2. The Rule Of This Court
Rule 1.16(a)(3), the rule defining and regulating the client-attorney relationship most pertinent to the present case, provides unequivocally that "a lawyer ... shall withdraw from the representation of a client if ... the lawyer is discharged." The comment under the Rules of Professional Conduct Rule 1.16, explains that the rule means "[a] client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services." (Emphasis added). Moreover, this court has held that "Disciplinary Rule 2-110(B)(4) [the identical predecessor provision to Rule 1.16] recognizes the client's absolute right to discharge his attorney.... Thus an attorney can [not] force his continued representation of a client who wishes to discharge him...." Scott v. Kemper Ins. Co., 377 So.2d 66, 69-70 (La. 1979) (Emphasis added); Accord: Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102, 111, 114, 116 (Calogero, J., On Rehearing) (Dennis, J., dissenting from original opinion).
The rule that a client may discharge his attorney at any time with or without cause was generally accepted as a jurisprudential precept prior to the adoption of either the Code of Professional Responsibility or the Model Rules of Professional Conduct. See Henry, Walden & Davis v. Goodman, 294 Ark. 25, 741 S.W.2d 233 (1987); In Re Estate of Deardoff, 10 Ohio St.3d 108, 461 N.E.2d 1292 (1984); Heinzman v. Fine, 217 Va. 958, 234 S.E.2d 282 (1977); Ambrose v. Detroit Edison, 65 Mich.App. 484, *352 237 N.W.2d 520 (1976); People v. Radinsky, 182 Colo. 259, 512 P.2d 627 (1973); Fracasse v. Brent, 6 Cal.3d 784, 100 Cal. Rptr. 385, 494 P.2d 9 (1972); Chancey v. West, 266 Ala. 314, 96 So.2d 457 (1957); Cole v. Meyers, 128 Conn. 223, 21 A.2d 396 (1941); First Nat'I Bank v. Bassett, 183 Okla. 592, 83 P.2d 837; Ramey v. Graves, 112 Wash. 88, 191 P. 801 (1920); Martin v. Camp, 219 N.Y. 170, 114 N.E. 46 (1916); Louque v. Dejan, 129 La. 519, 56 So. 427 (1911); See Saucier v. Hayes Dairy Products, Inc., supra at 111; Kalish, Covenants Not to Compete and the Legal Profession, 29 S.L.Univ.L.J. 423, 439 (1985); Comment, A Mere Quantum Meruit for Attorneys' Fees, 30 Yale L.J. 514 (1921); 1 Thorton on Attorney at Law § 138 (1914).
Indeed, the courts generally found that sound reasons of public policy and justice supported the mandatory discharge rule in the adjudication of individual cases before it was formalized as a disciplinary rule. The relation of attorney and client is one of special confidence and trust and the dignity and integrity of the legal profession demand that the interests of the client be fully protected. If the basis of the trust and confidence underlying a client-attorney relationship has been substantially undermined, the client must have the absolute right to terminate the relationship. Without public confidence in the members of the legal profession which is dependent upon absolute fairness in the dealings between attorney and client, courts cannot function in the proper administration of justice. Inherent in the relationship between attorney and client is the fact that the client must rely almost entirely upon the good faith of the attorney who alone can make an informed estimate of the value of the client's legal right and of the expense and effort necessary to enforce it. Saucier v. Hayes Dairy Products, Inc., supra at 111; Henry, Walden & Davis v. Goodman, supra; In Re Estate of Deardoff, supra; Heinzman v. Fine, supra; Ambrose v. Detroit Edison, supra; People v. Radinsky, supra; Fracasse v. Brent, supra; Chancey v. West, supra; Cole v. Meyers, supra; First Nat'l Bank v. Bassett, supra; Ramey v. Graves, supra; Martin v. Camp, supra; Louque v. Dejan, supra; Comment, A Mere Quantum Meruit for Attorneys' Fees, supra; 1 Thorton on Attorney at Law, supra.
In Louisiana prior to the adoption of Rule 1.16(a)(3), the relation of attorney and client was usually held to be that of mandate and revocable at the will of the client. Louque v. Dejan, 129 La. 519, 56 So. 427 (1911); Planters' Lumber Co. v. Sugar Cane Byproducts Co., 162 La. 123, 110 So. 172 (1926); Gravity Drainage Dist. No. 2 v. Edwards, 20 So.2d 405, 207 La. 1 (1944); Smith v. Vicksburg S. & P. Ry., 112 La. 985, 36 So. 826 (1904); Comment, Termination of Powers of Attorney in Louisiana By Act of Parties, 22 Tul.L.Rev. 623, 633 (1948).

3. The Interim Between Rivet v. Battistella and Succession of Jenkins
In Rivet v. Battistella, 167 La. 766, 120 So. 289 (1929) this court held that a testator's designation of an attorney to assist the executor in settling the estate was valid and binding on the executor and those who take under the will. The court reasoned that since the testator may impose on the donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals, citing R.C.C. 1527 and 1519, the designation of an attorney is enforceable because it does not offend public policy in these respects.
The Rivet court did not expressly consider whether its holding was in conflict with the ruleonly jurisprudentially established at that timethat the client may discharge his attorney at any time with or without cause. But the Rivet holding was later considered as having created an exception to the general rule. See Comment, Testamentary Designation of Probate Counsel, 51 Tul.L.Rev. 334, 342 n. 57 (1977); Comment, The Attorney-Client Relation in Louisiana, 18 La.L.Rev. 690, 702 (1958). With this decision Louisiana also became the only state that would enforce a testator's appointment of an attorney to handle the succession and provide a right of action to the designated attorney over the objection of the executor who had rejected his services as unsatisfactory. Comment, Testamentary *353 Designation of Probate Counsel, supra; J. deFuria, Jr., A Matter of Ethics Ignored: The Attorney-Draftsman as Testamentary Fiduciary, 36 Kan.L.Rev. 275, 278 n. 16 (1988). In all other states, the designation of an attorney in the will was considered a precatory statement, merely the testator's advice or preference, and not binding on the executor. deFuria, Jr., supra at 278, n. 16.; In Re Estate of Deardoff, supra; Chancey v. West, 266 Ala. 314, 96 So.2d 457 (1957); In Re Estate of Smith, 131 Ariz. 190, 639 P.2d 380 (App. 1981); Highfield v. Bozio, 188 Cal. 727, 207 P. 242 (1922); In Re Estate of Marks, 83 So.2d 853 (Fla.1955); In Re Estate of Fresia, 390 So.2d 176 (Fla.App.1980); Hawaiian Trust Co., Ltd. v. Hogan, 1 Hawaii App. 560, 623 P.2d 450 (1981); Conlan v. Sullivan, 280 Ill.App. 332 (1935); In Re Stahl's Estate, 113 Ind.App. 29, 44 N.E.2d 529 (1942); Drosos v. Drosos, 251 Iowa 777, 103 N.W.2d 167 (1960); In Re Kenney's Will, 213 Iowa 360, 239 N.W. 44 (1931); Robinson's Ex'rs v. Robinson, 297 Ky. 229, 179 S.W.2d 886 (1944); State, ex rel. v. Seifert, Johnson & Hand v. Smith, 260 Minn. 405, 110 N.W.2d 159 (1961); Conway v. Parker, 250 N.W.2d 266 (N.D. 1977); In Re Estate of Kelley, 126 N.J.Super. 376, 314 A.2d 614 (1974); Carton v. Bordon, 8 N.J. 352, 85 A.2d 257 (1951); In Re Sherman's Estate, 9 Misc.2d 731, 104 N.Y.S.2d 988 (1951); In Re Caldwell, 188 N.Y. 115, 80 N.E. 663 (1907); In Re Lackmund's Estate, 179 Or. 420, 170 P.2d 748 (1946); Young v. Alexander, 84 Tenn. 108 (1855); Mason & Mason v. Brown, 182 S.W.2d 729 (Tex.Civ.App. 1944); Comment, Testamentary Designation of Probate Counsel, supra.[2]
The Rivet rule was a jurisprudential creation, there being no law expressly authorizing or prohibiting testamentary designation of an attorney for the estate. This decision and its progeny came under criticism from both ethical and legal standpoints. This court's willingness to enforce the designation over the objections of the executor, the widow and the heirs gave added incentive to attorneys who would seek to unethically influence their clients to name them as lawyers in testamentary instruments. See Comment, Testamentary Designation of Probate Counsel, supra at 351-353. Further, the Rivet jurisprudential rule had a questionable premise and created potentially serious problems conducive to further litigation: the lack of any effective grounds for ever discharging a designated attorney; the treatment of a designated attorney as a legatee, as some courts held; conflicts of interests between the attorney and other parties to the succession; the attorney's disqualification as witness, or notary to the will, thus possibly voiding the will. Id. at 343-346.
Subsequently, in Succession of Jenkins, 481 So.2d 607 (La.1986), this court overruled Rivet v. Battistella, abolishing the Rivet rule that the designation of an attorney in a will is binding on the executor. But the process of overruling Rivet actually began earlier in Succession of Boyenga, 437 So.2d 260 (La. 1983), when the court held that a testator-designated attorney who had performed no work on a succession was not entitled to exact legal fees from the executrix because DR 2-106 and 2-110(A)(3) prohibit a lawyer from collecting an unearned fee and command him to refund promptly any unearned advance upon termination of employment. Thus, it is arguable that this court's decision in Boyenga foreordained our decision in both Succession of Jenkins and in the present case by indicating that a testator designated attorney has no effective recourse for a fee against an executor who is determined to prevent him from working on the succession and to employ other counsel for that purpose. See Mengis, Professional Responsibility, 47 La.L.Rev. 415, 417 (1986).
In Succession of Jenkins, this court held that the designation of an attorney in a will is not binding because "it infringes on the codal authority of the executor; it is not *354 specifically authorized by law; it encourages solicitation and the appearance of impropriety on the part of attorneys; and it is contrary to general civilian principles." Succession of Jenkins, supra at 610.
Additionally, Jenkins' majority and concurring opinions noted that there are serious ethical ramifications arising from the designation of an attorney-draftsman as attorney for the executor. When an attorney is permitted to name himself as the attorney for the executor in a will that he drafts, there are serious ethical problems centering around questions of improper solicitation, conflicts of interest and the client's ultimate freedom to discharge the attorney. See G. Johnston, An Ethical Analysis of Common Estate Planning PracticesIs Good Business Bad Faith, 45 Ohio St.L.J. 57, 101 (1984). As Professor Johnson skillfully explains, even in the states where the designation of an attorney has never been binding, these appointments cause serious ethical concerns. Id. Any knowledgeable lawyer knows that there are instances in which attorneys have improperly solicited future business by suggesting such a designation to the testator who in many instances does not realize that he is involved in a solicitation or a business transaction with the attorney or that he is in effect making a testamentary gift to the attorney. In some instances the provision is simply inserted into the will without specifically discussing the designation with the testator. Of course, the actual facts in a particular situation are virtually impossible to ascertain because the testator is dead by the time the issue is raised and the attorney-draftsman is usually the only other witness to the transaction. Moreover, the lawyer's self-interest in securing lucrative positions under the will creates a disincentive to advise the client about alternative methods of wealth transfersuch as outright giftsthat do not require the additional expenses of executors, trustees, and lawyers. Most egregious is the fact that the executor-designee and members of the testator's family may be misled into believing that they must retain the services of the attorney named in the will. Thus, in the case in which the testator had no genuine preference in the matter, but simply acceded to the provision inserted by the drafting attorney in the belief that it was routine boilerplate, the attorney's will is the only one which is truly implemented. Consequently, the Jenkins court concluded that public policy considerations militate against making an attorney designation a binding condition in a will. Succession of Jenkins, supra at 609. See generally, Levine, Legal Ramifications of Unethical Planning Practices, 124 Trusts & Estates 47, 50 (Oct. 1984); Wolfram, supra at § 8.2.4, 488; 31 Am.Jur.2d 97, Executors & Administrators § 16.

4. The Statute, the Conflict, the Resolution
Following Succession of Jenkins the legislature in its next regular session enacted La.R.S. 9:2448.[3] La.R.S. 9:2448 is a *355 legislative act that purports to regulate an important aspect of the practice of law because it provides for a method by which an attorney may be engaged to handle the legal affairs of a succession in a legally binding relationship with the executor, heirs and legatees of a succession and further provides the exclusive method by which the executor or others may discharge or remove him. The statute is a general law and in a universal manner makes itself applicable to any case in which a testator has designated an attorney to represent the executor or the succession. The central, foundational part of the statute is La.R.S. 9:2448(B)(2), which provides that an attorney designated by a testator in his will may be removed as such only for just cause. Because this is the heart of the statute that gives it force, effect and definitive meaning, the remainder must be considered to have been auxillary, inseparable and not meriting enactment without the main part. This core element of the statute is in direct, irreconcilable conflict with Rule 1.16(a)(3), the disciplinary rule of this court providing that an attorney is required to withdraw from employment if he is discharged by his client with or without cause. Rule 1.16(a)(3) is an important element of the Code of Professional Responsibility giving the client the absoute right to fire a lawyer in whom he has lost faith or confidence. Consequently, we cannot ratify La. R.S. 9:2448 as being helpful or beneficial to the exercise of our inherent judicial power and responsibility. Instead of aiding our efforts to define and regulate the practice of law and the client-attorney relationship by adopting and enforcing Rule 1.16(a)(3), the statute tends to obstruct, impede and defeat our progress. Furthermore, to acknowledge the disciplinary rule, the constitutional power of this court to enact it and yet permit the legislative act to supplant the rule, would degrade this court, weaken the profession and impede the administration of justice. Accordingly, we refuse to approve La.R.S. 9:2448 and will strike it as being null and void.

5. Respondent's Argument
Respondent does not challenge this court's constitutional power or responsibility to adopt Rule 1.16(a)(3) in regulating the practice of law. Nor does she deny that La.R.S. 9:2448 is in conflict with Rule 1.16(a)(3) or that the statute must yield to the rule. But in connection with a different issue she suggests that the attorney named by the testator should be considered the testator's attorney, not the executor's. From this we infer that respondent would argue that the executrix in the present case cannot invoke Rule 1.16(a)(3), which gives a client an absolute right to discharge his lawyer, because the attorney designated by the testator does not act as attorney for the executrix or executor.
That an attorney who renders legal services in furtherance of the administration of a testate succession is acting as the attorney for the executor conducting that administration seems self-evident. The decisions of this court and La.R.S. 9:2448 itself indicate that regardless of who names the attorney, he becomes the executor's attorney when he advises and assists the executor in the management of the estate. The legislature acknowledged as much by passing La.R.S. 9:2448 in an attempt to restrict the executor's power to discharge the attorney by providing that he may do so only for just cause. If the executor had been powerless to fire the attorney in the first place, because of the lack of an attorney-client relationship, there would have been no need for the legislation at all. Moreover, this court has indicated by its decisions in Succession of Jenkins, supra and Succession of Boyenga, supra that an attorney client relationship exists between the executor and those who take under the will and the attorney who is named therein. See Mengis, supra at 418. Furthermore, respondent's argument quickly reduces itself to an absurdity, because an attorney with only the testator for a client would become his own master *356 and invulnerable to discharge by anyone, even for just cause based on outrageous abuse. Finally, even in Rivet v. Battistella and its progeny we find both express statements and implications to the effect that, although the attorney has been appointed by the testator's binding designation, he is required to provide legal services to the executor and heirs in the administration of the estate, and that they are bound to accept the attorney's services. Id.; Succession of Feitel, 187 La. 596, 175 So. 72 (1937); Succession of Rembert, 199 La. 743, 7 So.2d 40 (1942); Succession of Bush, 223 La. 1008, 67 So.2d 573 (1953); Succession of Pope, 230 La. 1049, 89 So.2d 894 (1956); and Succession of Falgout, 279 So.2d 679 (La.1973).
In any event, it is not the prerogative of the legislature to define or regulate the practice of law or the attorney-client relationship. It is emphatically the province and the duty of this court to define the roles of client and attorney in the client-attorney relationship, by rule or adjudication, and to say what the law is in that regard. By applying rules and precepts to particular cases, we must of necessity authoritatively expound and interpret those precepts. If it were otherwise, the legislature could, as it has attempted to do in this case, render ineffective the inherent judicial authority by amending or superseding any decision or duly adopted rule of this court governing the practice of law.
The Rules of Professional Conduct are regulatory laws adopted by this court in the interests of the public, the courts and the legal profession. The purpose of lawyer discipline and disability proceedings employing these rules is to maintain appropriate standards of professional conduct in order to protect the public and the administration of justice from lawyers who have demonstrated by their conduct that they are unable or unlikely to be able to properly discharge their professional duties. ABA Standards for Lawyer Discipline and Disability Proceedings § 1 (1979). Accordingly, the disciplinary rules are rules of reason that should be interpreted and applied with reference to the purposes of maintaining appropriate professional standards and protecting the public and the courts from substandard attorney conduct. In performing its regulatory function by applying and interpreting the disciplinary rules, this court will look beyond superficialities for legal, economic and social realities; it will not accept uncritically the characterization or nomenclature assigned to relationships or transactions by other tribunals or branches of government.
A brief look at the interactions of attorneys and executors in the administration of successions convinces us that a client-attorney relationship is created between them when the attorney performs any significant legal service in furtherance of the administration of the estate. Indeed, it is difficult to imagine any valuable legal service that a lawyer could render for a testate succession that would not also aid the executor in the performance of his broad duties. The functions of an executor are to collect the assets of the estate, pay the succession debts, and distribute the balance of the property in accordance with the decedent's will or the laws governing intestate successions. The succession representative's principal activity is to liquidate the part of the decedent's estate which is required to satisfy the claims against the succession. Comment, Powers of Succession Representative in Louisiana, 27 Tul.L.Rev. 87 (1952). An executor or other succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure so to act. La.C.C.P. art. 3191. Under the code of civil procedure the executor or other succession representative has been given broadened powers: the right to compromise any action or right of action by or against the succession or to extend, render, or in any manner modify the terms of any obligation owed by or to the succession. La.C.C.P. art 3198; to be deemed to have possession of all property of the succession and to enforce all obligations in its favor. La.C.C.P. art. 3211; to preserve, *357 repair, maintain, and protect the property of the succession. La.C.C.P. art. 3221; to invest the funds of the succession and make them productive. La.C.C.P. art. 3223; to under court order continue any business of the deceased subject to testamentary provisions. La.C.C.P. art. 3224; to lease the succession property. La.C.C.P. art. 3226; to perform an executory contract in writing, which the deceased entered before his death. La.C.C.P. art 3227; to borrow money for the purpose of preserving the property or the orderly administration of the estate. La.C.C.P. art. 3228.
In light of the executor's functions, powers and duties, we conclude that he is in truth the majordomo of the estate, having possession of all its property as well as the power and the responsibility to preserve its assets and enforce its claims. As such, the executor is in need of legal representation in order to make proper management decisions and protect himself against considerable risk of personal liability. If an attorney has been designated to handle the succession and accepts the assignment, he is duty bound to provide representation to the executor simply because the executor is the only person legally empowered to act with respect to the succession. Thus, there is at least an inchoate client-attorney relationship between the executor and the designated attorney from the moment of the executor's confirmation and issuance of letters testamentary. Consequently, we are convinced that the relationship between the executor and the attorney falls within the client-attorney relationship envisioned by Rule 1.16(a)(3) and the Rules of Professional Conduct.
Furthermore, it is universally held that when an attorney is employed to render services in procuring the admission of a will to probate, or in settling the estate, he acts as attorney of the executor, and not of the estate, and for his services the executor is personally responsible. In Re Estate of Ogier, 101 Cal. 381, 385, 35 P. 900, 901 (1894) ("There is no such office or position know to law as `attorney for an estate' ... [h]e acts as the attorney for the executor") (emphasis added). In Re Caldwell, 188 N.Y. 115, 80 N.E. 663 (1907); Laus v. Braasch (In Re Braasch's Estate), 274 Wis. 569, 80 N.W.2d 759 (1957); Johnston, supra at 102 n. 288 (1984); deFuria, Jr., supra at 278 n. 16 ("In most states, the attorney who handles the legal affairs of the estate represents the executor."); Levin, Legal Ramifications of Unethical Planning Practices, 124 Trusts & Estates 47, 50 (Oct. 1984) ("... a lawyer has no vested interest in representing the estate of one whose will he has drawn ... the executor is entirely free to select any counsel he may wish."); Comment, WillsDirection to Employ Certain Attorney for Probate, 36 Marq.L.Rev. 211, 212 (1952) ("The office of... `attorney for the estate' is unknown to law. These terms are popularly used to indicate one who is attorney for the administrator or executor in the management of the estate."); see also In Re Arneberg's Estate, 184 Wis. 570, 200 N.W. 557 (1924); In Re Lachmund's Estate, 179 Or. 420, 170 P.2d 748 (1946); In Re Estate of Deardoff, 10 Oh.St.3d 108, 461 N.E.2d 1292 (1984); In Re Estate of Fresia, 390 So.2d 176 (Fla. App. 1980); Chancey v. West, 266 Ala. 314, 96 So.2d 457 (1957); In Re Estate of Marks, 83 So.2d 853 (Fla. 1955); Comment, WillsEffect of Testamentary Designation of Counsel For The Executor, 31 Marq.L. Rev. 231 (1947); Comment, Testamentary Directions to Employ, 41 Harv.L.Rev. 709 (1928).
The idea that the living attorney is actually performing legal services for a dead testator is quite problematic. As Cardozo remarked in a different client-attorney context, "[t]he notion that such a thing is possible betrays a strange misconception of the function of the legal profession and its duty to society." Andrewes v. Haas, 214 N.Y. 255, 108 N.E. 423 (1915).[4] The initial problem is that only a "person" is capable of having rights and obligations. Plainiol, Traite Elementaire De Droit Civil, Vol. I, Part I, § 362. Since legal personality is *358 lost with life; the dead are no longer persons having rights and obligations. La. C.C. art. 25; Plainiol, Traite Elementaire De Droit Civil, Vol. I, Part I, 1 § 371; see Yiannopoulas, Louisiana Civil Law System § 50 (1977). The idea that a dead person continues a legal consensual relationship with a living fiduciary who was appointed to act primarily for his benefit and subject to his control is a fiction having no basis in our general principles of law. See Comment, Termination of Powers of Attorney in Louisiana by Operation of Law, 25 Tul. L.Rev. 249 (1951). Second, the contract of the mandate necessitates that one "person" give power to another "person" to transact for him and in his name, one or several affairs. La.C.C. art. 2935. Thus, if the testator is considered the client, then by operation of law his death would automatically terminate the attorney-client relationship. Kinsey v. Dixon, 467 So.2d 862, 864 (La.App. 2d Cir.1985); Due v. Due, 342 So.2d 161, 164-165 (La.1977); La.C.C. art. 3027; Comment, The Attorney-Client Relation in Louisiana, 28 La.L.Rev. 690, 702 (1958). Third, inherent in the concept of the attorney-client relationship is the opportunity for effective communication between the parties as part of a dynamic and changing relationship. Rule 1.4 ("A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information... the lawyer shall give the client sufficient information to participate intelligently in decisions...."); Rule 2.1 ("In representing a client, a lawyer shall exercise independent professional judgment and render candid advice."); Wolfram, supra at § 4.5, 164 ("nothing lends more vitality to the client-lawyer relationship than effective communications between lawyer and client... [a] client has an equal interest in receiving legal evaluations and advice from the lawyer and in being kept informed by the lawyer about important steps in the matter, and, periodically, about whether progress is being made or not.").
Respondent also suggests that the designated attorney may be considered the attorney for the succession, rather than the attorney for the executor. But a succession is no more of a person or legal entity than a deceased human being. "Succession is the transmission of the estate of the deceased to his successors. * * *" La. C.C. art. 871. Thus, succession is defined as a process, and the code now avoids use of the meaning of succession which describes the estate of the deceased as if it were a separate legal entity. Id. Comment. Likewise, article 872 permits reference to the "estate" of the deceased as including property, rights, and obligations a person leaves after his death, but grants no separate legal existence to such an entity. La.C.C. art. 872 and comment.
In support of the idea that a client-attorney relationship between the testator and the attorney designated in the will survives the testator's death and precludes a professional relationship between the attorney and the executor, respondent cites Rules of Professional Conduct 1.2(a), 1.8(f), and 1.16, La.C.C.P. art. 5091, and Succession of Zatarain, 138 So.2d 163 (La.App. 1st Cir. 1962). But none of these authorities supports the concept.
Rule 1.2(a) provides that: "A lawyer shall abide by a client's decisions concerning the objectives of the representation,..., and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept and offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify." The comment under the rule, in pertinent part, provides that: "Both lawyer and client have authority and responsibility in the objectives and means of representation. The client has ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law and the lawyer's professional obligations. Within those limits, a client also has a right to consult with the lawyer about the means to be used in pursuing those objectives."
Respondent contends that because the decedent's wishes, as expressed in his last will and testament, dictate the ultimate objectives *359 in the administration of a succession, the decedent should be considered to be the client who determines the purposes to be served by the legal representation. We do not agree. The function of the executor is to collect the assets of the estate, pay the succession debts, and distribute the balance of the property in accordance with the decedent's will. Comment, Powers of A Succession Representative in Louisiana 27 La.L.Rev. 88 (1952). The function of the attorney is to provide competent representation to the executor to assist him in performing his duties. The fact that the will, within legal limits, governs the distribution of property does not make the decedent the client, and, of course, does not enable him to supervise the performance of the executor's duties. In fact, Rule 1.2(a), as every other rule, contemplates a lawyer's representation of a living client who "has a right to consult with the lawyer about the means to be used in pursuing [the client's] objectives." Id. Comment [1]. Of course, when the lawyer knows that the executor expects assistance not permitted by law or the Rules of Professional Conduct, the lawyer is obliged to consult with the client regarding the relevant limitations on the lawyer's conduct. Rule 1.2(e).
Rule 1.8(f), in pertinent part, states: "A lawyer shall not accept compensation for representing a client from one other than the client unless: (1) the client consents after consultation * * *". Respondent argues that because the attorney will be paid with succession funds the rule indicates that the testator is the client. But she overlooks the fact that it is the executor's duty to pay the lawyer's fee with succession funds as a debt of the succession. The succession is not a legal entity and therefore cannot pay anyone. The only person or legal entity involved who can act as a client in paying the lawyer is the executor.
La.C.C.P. art. 5091(2) provides that the court shall appoint an attorney at law to represent the defendant, on the petition or ex parte written motion of the plaintiff, when the action or proceeding is in rem and "the defendant is dead, no succession representative has been appointed, and his heirs and legatees have not been sent into possession judicially ... or ... the defendant's property is under the administration of a legal representative, but the latter has died, resigned, or been removed from office and not successor thereof has qualified, or has left the state permanently without appointing someone to represent him." (Emphasis added) Respondent cites these as instances in which an attorney is authorized to represent a deceased person directly. But the fact that such representation is specially authorized only in proceedings in rem when "no succession representative has been appointed" or "the latter has died", indicates that an attorney may not directly represent a deceased person in other types of proceedings, or even in an in rem proceeding when there is a living, duly appointed succession representative.
Rule 1.16 requires a lawyer to withdraw from representation of a client if representation would be contrary to the rules of professional conduct or other law; the lawyer's mental or physical condition materially impairs his representation; or the lawyer is discharged. Respondent points out that the rule does not require the attorney to withdraw upon the death of the client. But death of the client itself terminates the client-attorney relationship by operation of law; therefore, there is no necessity for a rule requiring the attorney to withdraw when the client dies. Due v. Due, 342 So.2d 161, 164-165 (La.1977); Kinsey v. Dixon, 467 So.2d 862, 864 (La.App. 2d Cir. 1985).

In Succession of Zatarain, 138 So.2d 163 (La.App. 1st Cir.1962) the court of appeal held that an attorney named in a will to handle the testator's estate could not delegate his appointment to another attorney, but, in dicta, recognized "that an attorney named by a testator to represent the testator's executor or heirs enjoys an `irrevocable status' in that as an agent of the testator so designated in the testator's will he may not be discharged from the mandate thusly conferred." Id. at 169. Respondent contends that the court drew a significant distinction between an executor *360 and a client, but the dicta of the court ambiguously refers to the attorney as "agent of testator" and as the lawyer "named ... to represent the testator's executor." Considering that the ambiguous statement was obiter dicta, uttered in a lower court opinion prior to the adoption of Rule 1.16(a)(3) and prior to this court's overruling of Rivet v. Batistella, respondent's argument in this regard is not very persuasive.
Finally, respondent suggests that this court should uphold La.R.S. 9:2448 because invalidating it might call into question a similar provision, La. R.S. 9:2241(A), that provides that a designation in a trust instrument of an attorney to handle legal matters relating to the trust shall be binding on the trustee and the beneficiary. But the question of the validity of La.R.S. 9:2241(A) is clearly not before us. The plaintiff has not challenged that statute and evidently has no interest or standing to bring such a suit. Further, the trust instrument statute is not identical to the law before us today, and we cannot anticipate what the precise factual context will be when and if we are called upon to consider the trust instrument statute's validity in a future case. Finally, the assertion that our decision may have implications for future cases cannot in any way deter this court from rendering its opinion in the present case upon whether the statute in question conflicts with a rule of this court and the exercise of its inherent judicial power.

Decree
For the reasons assigned, it is ordered, adjudged and decreed that there be judgment in favor of plaintiff declaring that, insofar as it conflicts with Rule 1.16(a)(3), LSA-R.S. 9:2448 is unconstitutional, null, void, and of no effect.
LEMMON, J., concurs.
WATSON, J., joins the opinion and assigns additional reasons.
CALOGERO, C.J., dissents and assigns reasons.
WATSON, Justice, concurs in the majority's analysis and assigns additional reasons.
There is no federal constitutional right to dispose of property by will. Irving Trust Co. v. Day, 314 U.S. 556, 62 S.Ct. 398, 86 L.Ed. 452 (1942). "Rights of succession to the property of a deceased, whether by will or by intestacy, are a statutory creation, and the dead hand rules succession only by sufferance." Irving Trust, 314 U.S. at 562, 62 S.Ct. at 401, 86 L.Ed, at 457. The Irving Trust rule accords with Blackstone's view; the right to take by inheritance or will is not a natural right.
In a related vein, Blackstone considered that the right to control property ceases upon death.[1] Following this precept, all states except Wisconsin hold that the testamentary appointment of an attorney is merely advisory or precatory. See, e.g., McMullin v. Borgers, 761 S.W.2d 718 (Mo. App.1988); Chancey v. West, 266 Ala. 314, 96 So.2d 457 (1957); and In Re Marks' Estate, 83 So.2d 853 (Fla. 1955). Thus, the Jenkins decision and this opinion are in the majority tradition of American testamentary law.
Louisiana law traditionally treated the fidei commissum in a similar manner. This donation mortis causa was a fiduciary bequesti.e., a gift accompanied by a conditional disposition to another party. While the conditional disposition was prohibited, the balance of the will was valid. The condition was regarded as a precatory suggestion addressed to the conscience of the donee or legatee but without binding effect. Succession of Walters, 261 La. 59, 259 So.2d 12 (1972).
Since final authority over regulating the practice of law is vested in the Louisiana Supreme Court and not in the Louisiana Legislature, legislative acts that affect the *361 practice of law can be upheld only if they do not conflict with this court's inherent authority. By preventing a client from discharging a lawyer named in a will except for just cause, LSA-R.S. 9:2448 unconstitutionally interferes with the normal attorney/client relationship. Additionally, the statute sanctions and encourages solicitation, thereby conflicting with this court's regulation of legal practice. Since the statute conflicts with this court's paramount authority, it is unconstitutional.
While the attorney represents principally the executor, it should be noted that there is some degree of responsibility, which need not be precisely defined today, toward the heirs, legatees and any other parties concerned with the succession.
I respectfully concur in the majority's conclusion that LSA-R.S. 9:2448 is unconstitutional.
CALOGERO, Chief Justice, dissenting,
I dissent from the majority's decision that LSA-R.S. 9:2448 is unconstitutional, that it impermissibly conflicts with this court's exercise of its inherent judicial power and responsibility.
As the majority notes, our decision in Succession of Jenkins, 481 So.2d 607 (La. 1986), overruled a longstanding line of cases beginning with Rivet v. Battistella, 167 La. 766, 120 So. 289 (1929). Rivet held that the testamentary appointment of attorneys was binding upon the executor and those who took under the will. Jenkins identified the ethical and doctrinal concerns raised by the testamentary designation of attorneys,[1] and found that absent some specific legal authorization, those concerns counseled against the court's permitting such an appointment to have a binding effect. The Legislature responded to the Jenkins decision by enacting LSA-R.S. 9:2448, which now does provide the statutory authority found lacking in that case.
The ethical concerns cited by the Jenkins majority principally concern the potential for solicitation and conflict of interest associated with the binding testamentary appointment of attorneys. Although those concerns are valid,[2] I do not believe that the enactment of LSA-R.S. 9:2448 will necessarily prompt violation of the rules adopted by this court to govern attorney conduct.[3] The statute does not sanction *362 conflicts of interest or solicitation. That solicitation is possible in connection with the testamentary designation of attorneys does not make the statutory content impermissible or unconstitutional. We are required by the rules of statutory construction to give effect to the intent and purpose of the Legislature, if possible. Backhus v. Transit Casualty Co., 549 So.2d 283 (La. 1989).
The majority finds the statute to be unconstitutional on the basis that it conflicts with Rule 1.16(a)(3) of the Model Rules of Professional Conduct, which requires an attorney representing a client in any matter to withdraw from employment if he is discharged by his client. However, LSA-R.S. 9:2448 reflects a legislative sanction for the testator's choice of an attorney to represent his executor and handle the legal matters regarding his estate, a sanction in keeping with Louisiana's traditional deference to the testator's wishes. Louisiana Civil Code article 1712 provides that "In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained." As the Jenkins court noted, "Naming an attorney in a will must be regarded as an expression of the testator's desire." 481 So.2d at 610. There are many instances in which an attorney is particularly knowledgeable about the affairs of the testator, and in which the testator names a particular executor only because he is also able simultaneously to name the attorney who will represent that executor in handling the legal affairs of his estate.
The attorney named in a will has a responsibility to assist the executor, and the court, in the administration of the succession, as well as a duty to carry out the intent of the testator concerning the disposition of his estate. There is no presupposition at the outset that conflict will occur between the testator's intent and the administration of the succession in congruity with that intent. Should conflict arise between the executor's interests, purposes, and desires and the lawyer's understanding of how the testator's wishes should be carried out and the estate administered, LSA-R.S. 9:2448 designates the district judge as arbiter, with the power to discharge the attorney for cause.[4] Contrary to the majority's statement that "an attorney with only the testator for a client would become his own master and invulnerable to discharge by anyone, even for just cause based on outrageous abuse," the statute does not discount the possibility of discharge of an attorney named in a will. Such an attorney would remain subject to judicial scrutiny and to appropriate sanctions for improper conduct.
I conclude that LSA-R.S. 9:2448 allows a testator to choose the lawyer who will handle the legal matters regarding his estate, while also providing adequate protection to the interests of the executor and heirs. I do not find the binding testamentary appointment of attorneys ethically unacceptable nor does it impermissibly conflict with this court's exercise of its judicial power.
NOTES
[*] Justice Melvin A. Shortess of the Court of Appeal, First Circuit, participated in this decision as Associate Justice Pro Tempore.
[1] The wide range of rules adopted pursuant to this responsibility include adopting the Articles of Incorporation of the Louisiana State Bar Association as the "rules of this court" (Supreme Court of Louisiana Order Book March 12, 1941) (These rules include the Code of Professional Responsibility.); Re-establishing the requirements for admission to the bar (Rule 17); Vacating and repealing Article XV of the articles of Incorporation of the Louisiana State Bar Association and adopting new rules for lawyer disciplinary enforcement (Rule 19, § 1); Establishing one permanent statewide agency, the Disciplinary Board of the Louisiana State Bar Association, to administer the lawyer discipline and disability system (Rule 19, § 2); Requiring lawyers admitted to practice to pay an annual fee for costs of discipline and enforcement of rules (Rule 19, § 8); Establishing sanctions for attorney misconduct (Rule 19, § 10); Allowing for the limited participation of law students in trial work (Rule 20); Establishing the requirements for continuing legal education (Rule 30); and, Instituting a mandatory program governing the interest on lawyers' trust accounts (IOLTA) (Rule 1.15, Rules of Professional Conduct (as amended December 13, 1990)).
[2] Wisconsin, which is unique in constitutionally guarantying the right to make a will and have its provisions enforced, recently held enforceable a will provision stating that a personal representative could serve only if he retained the attorney who drafted the will. In Re Estate of Devroy, 109 Wis.2d 154, 325 N.W.2d 345 (1982).
[3] Sec. 2448. Designation of attorney

A. A testator may designate in his will an attorney to handle the legal matters of his estate, to open and close the estate, and to represent the executor. The testator may also designate one or more successor attorneys in the event the designated attorney predeceases the testator or is unable or unwilling to serve or, having served, discontinues doing so for any reasons or becomes at any time incapable of acting or resigns.
B. The designation of an attorney shall also be governed by the following.
(1) The designation in a testament or a codicial of an attorney or a successor attorney to handle the legal matters of the estate shall be valid and binding on the executor, or other succession representative, and the heirs and legatees.
(2) An attorney so designated may be removed as such only for just cause.
(3) An attorney for the estate shall be allowed as compensation for his services such reasonable amount as is provided in the testament in which he is appointed. In the absence of such a provision for compensation in the testament, the attorney shall be allowed such reasonable amount as is provided by agreement between the attorney, the succession representative, if any, the surviving spouse, if any, and all competent heirs or legatees of the deceased. In the absence of a provision for compensation in the testament or an agreement between the parties, the attorney for the estate shall be allowed a fair and reasonable fee for services actually rendered. The court may increase the compensation upon a proper showing that the fee provided in the testament or agreed upon between the parties is inadequate.
(4) The compensation of an attorney for the estate shall be due upon the homologation of the final account. The court may allow an attorney an advance upon his compensation at any time during the administration.
[4] Cardozo's comment was in response to an argument that the employment of a lawyer to serve for a contingent fee makes it the client's duty to continue the lawsuit and thus increase the lawyer's profit.
[1] "For, naturally speaking, the instant a man ceases to be, he ceases to have any dominion; else if he had a right to dispose of his acquisitions one moment beyond his life, he would also have a right to direct their disposal for a million of ages after him; which would be highly absurd and inconvenient. All property must therefore cease upon death...." 2 W. Blackstone, Commentaries *10.
[1] The court found that a binding designation impinged on the codal authority of the executor, encouraged solicitation and the appearance of impropriety on the part of attorneys, and was contrary to the civilian principle of le mort saisit le vif: the heirs have immediate seizen of the succession. Jenkins, 481 So.2d at 610. However, since the codal authority of the executor is legislatively created, the enactment of LSA-R.S. 9:2448, as a more recent and specific expression of the legislative will, cannot be said to impinge upon that authority. Regarding the civilian principle of le mort saisit le vif, it should be noted that there are numerous other methods in Louisiana law by which a testator can maintain some control over his estate after death. See, e.g., La.C.C. arts. 1300, 1301, 1302, 1724, and 1725. Since the enactment of the Trust Code, Louisiana testators have been able to place all of a legatee's property in a lifetime trust.
[2] As is the case when a client wishes to leave a legacy to the attorney drafting his will, the decision to appoint the drafter as the attorney for the testator's estate must originate with the testator. See ABA Committee on Professional Ethics & Grievances, Informal Decision 602 (1963). An attorney may not ethically rely on a client's failure to object to the inclusion of his appointment in the will. Rather, it should clearly be explained that it is the testator's choice whether to designate a particular attorney, that the designation is binding on the executor and heirs, and that in the absence of such a designation, it will be the executor's prerogative to appoint the attorney for the estate.
[3] Rule 1.7 of the Model Rules of Professional Conduct provides that

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's ... interests.
Rule 1.8 provides that
As a general principle, all transactions between client and lawyer should be fair and reasonable to the client.
Rule 7.3 provides that
A lawyer may not solicit professional employment from a prospective client with whom the lawyer has no prior family or professional relationship, in person or through others acting at his request, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain...."
Arguably, Rule 7.3 would not bar the solicitation of an existing, as opposed to a prospective client, and a person for whom an attorney is drawing a will would fall into the former category. That is not to say, however, that blatant solicitation of a new client who merely comes to an attorney for the confection of a will might not violate this Rule.
[4] Further, LSA-R.S. 9:2448 entitles a designated attorney only to a reasonable fee. The attorney would also be bound by the jurisprudentially developed safeguards which protect the interests of the executor and heirs. He would be entitled to be paid a fee only for work that he has done. Succession of Boyenga, 437 So.2d 260 (La. 1983). Even if attorney fees are fixed by statute or in a contract between the parties, courts may inquire into the reasonableness of such fees as part of their inherent power to govern the conduct of attorneys. See Central Progressive Bank v. Bradley, 502 So.2d 1017 (La.1987); City of Baton Rouge v. Stauffer Chemical Co., 500 So.2d 397 (La.1987). In administered successions, the fee is routinely reviewed in the court's approval of the homologation of accounts.