REMY CHIASSON, Judge Pro Tempore.
Plaintiff appeals a denial of an injunction prohibiting the implementation of a reorganization plan creating a Department of Public Safety for the City of Hammond which was adopted by city ordinance. We agree with the decision of the trial court. We append the articulate Reasons for Judgment provided by the learned trial judge, Robert H. Morrison, III.
We assess appellant with costs of this appeal.
AFFIRMED.
APPENDIX
RODDY F. DEVALL
VERSUS
RUSSELL DEPAULA, ET ALS
Files: May 25, 1995
NUMBER 95-00722, DIVISION “C”
21ST JUDICIAL DISTRICT COURT
PARISH OF TANGIPAHOA
STATE OF LOUISIANA
Dy. Clerk: Pat Laguna

REASONS FOR JUDGMENT

This is a suit for injunctive relief and for a declaratory judgment relative to certain actions taken by the Mayor and City Council of the City of Hammond. Plaintiff is the police chief of the City. Prior to the actions of the Council, he reported directly to the Mayor.
Subsequent actions of the Council endeavored to create a position of public safety director, which office would have supervisory powers over the police and fire departments. Plaintiff challenges the method by which this action was taken, contending that the actions required a referendum vote by the citizens of Hammond. Accordingly, Plaintiff contends that the actions of the City and the creation of the position of public safety director are, at this time illegal.
The City adopted a home rule charter, under the provisions of the Louisiana Constitution of 1974 at some point during the year 1977. Pertinent provisions of this charter are as follows:
ARTICLE IV.
ADMINISTRATION
Section 4-01. General Provisions
A. All departments, offices and agencies shall be under the direction and supervision of the mayor, except as otherwise provided by this charter ...
Section 4.04. Police Department
A. The head of the Police Department shall be the police chief, who shall be appointed by the mayor, subject to confirmation by the council, in accordance with applicable state law.
B. The police chief shall direct and be responsible for the preservation of public peace and order, prevention of crime; apprehension of criminals; assistance to the courts; and other law enforcement officials; and the enforcement of the laws of the state and the ordinances of the council. B. The fire chief shall direct and be responsible for fire prevention, fire extin-guishment and salvage operations; inspection and recommendations concerning the fire code of the City; investigations of fires and their causes; and the conduct of the fire safety and prevention programs
Section 4-10. Administrative Reorganization
*1139 A. The mayor shall have the right as chief executive officer to propose to the council the creation, change, alteration, combination or abolition of City departments, offices or agencies and/or the reallocation of the functions, powers, duties, and responsibilities of such agencies including those provided in this charter.
B. At the meeting of the council at which the reorganization plan is submitted, the council shall order a public hearing on the plan to be held within thirty (30) days. The council shall cause to be published in the official journal at least ten (10) days prior to the date of such hearing, the time and place thereof, a general summary of the reorganization plan and the times and places where copies of the proposed reorganization plan are available for public inspection. At the time and place so advertised, the council shall hold a public hearing on the reorganization plan as submitted.
C. The council shall within sixty (60) days following the date of the public hearing either approve or disapprove, but not amend, the proposed reorganization plan. Should the council fail to act within the prescribed time, the plan shall be deemed approved.
D. The council may, at any time, request the Mayor to submit a reorganization plan for the Council’s consideration. Should the Mayor fail to comply with this request within sixty (60) days, the Council may propose a reorganization plan of its own. Prior to becoming effective, any reorganization plan proposed by the council shall be adopted by ordinance.
E. Voting shall require a 2/3 majority of the full council
ARTICLE VII.
GENERAL PROVISIONS
Section 7-04. Amending or Repealing the Charter
A. Proposals to amend or repeal this charter may be made both by the council and by petition signed by not less than twenty-five (25) percent of the qualified voters of the City. The procedures and time limits for filing such a petition, for holding a public hearing on the matter and for calling an election on the petition request shall be the same as provided for in Section 6-01 (Initiative and Referendum). A petition shall contain the full text of the proposed amendment.
A proposal was submitted by the Mayor to the Council on January 17, 1995, for the creation of the post of public safety director. This proposal, introduced into evidence, reads, in part, as follows:
Under Section 4-04
Proposed Administrative Reorganization
Pursuant to Article IV, Section 4-10 of the Home Rule Charter for the City of Hammond, adopted April 11, 1977 as amended, entitled reorganization, particularly Section 4-10, sub-section A:
The Mayor hereby proposed to the Hammond City Council the creation of a Department of Public Safety, by combining the Police Department and Fire Department under the administrative department of public safety. The Police Department and Fire Department will remain as separate sub-departments under the department of public safety, subject to the direction and supervision of the Director of Public Safety. Both the Fire Department and Police Department will remain in tact under the civil service laws of this state. It will be combined for the purposes of accomplishing the goal of creating one publice safety department responsible for both police and fire protection within the City.
There follows the specific language of the proposal, which reads, in part, as follows:
Section 4-04. Public Safety Department.
A. The head of the Public Safety Department shall be appointed by the Mayor, subject to confirmation by the council ... Section 4-04. Police Department.
B. Police Department.
(1) The head of the Police Department shall be the Police Chief who shall be appointed by the Mayor, subject to confirmation by the council, in accordance with applicable state law.
*1140 (2) The Police Department and the chief thereof, shall be subject to the direct supervision of the Director of Public Safety.
(3) The Police Chief shall direct and be responsible for the preservation of public peace and order; prevention of crime; apprehension of criminals; assistance to the courts and other law enforcement officials; and the enforcement of the laws of the state and the ordinances of the council.
C. Fire Department
(Similar provisions are made with respect to the Fire Department, tracking the language as to responsibilities and duties originally contained in the City Charter, but with the addition of a similar subparagraph (2) as to supervision by the Director of Public Safety)
The minutes of the January 17 meeting of the City Council indicate that a discussion was held on this proposal, and that a question was posed by one of the councilmen as to whether this action required only a public hearing. A public hearing was set for February 7, 1995, and proof of advertisement of notice of the public hearing, on January 22, 1995, was offered into evidence.
On February 7, 1995, the public hearing was held. The minutes reflect that, again, a question was raised as to whether the action amounted to an amendment to the City Charter, and, again, it was stated that the action amounted to an administrative reorganization under Section 4-10 of the Charter, which did not amount to an amendment requiring a referendum vote of the people. Following the hearing, the Council adopted Ordinance #2372, creating the department of public safety.
The ordinance, as adopted, was identical to the proposal previously submitted to the Council by the Mayor on January 17, but without the introductory information quoted hereinabove. The heading of the ordinance read as follows:
BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF HAMMOND LOUISIANA AT THIS REGULAR SESSION HELD ON THE 7TH DAY OF FEBRUARY, 1995.
The Department of Public Safety is hereby created under Article IV of the Home Rule Charter for the City of Hammond.
Section 4-04. Public Safety Department
(The remainder of the ordinance tracked the language of the original proposal, quoted in part above.)
Plaintiff filed the present lawsuit on March 16, 1995. A portion of the petition contends that, since the language of the ordinance and actions taken by the Council with respect to the Department of Public Safety, and the Police and Fire Departments, refers to Article TV and Section 4-04, that an amendment to the City Charier was effectively contemplated or effectuated, necessitating a referendum vote of the citizens.
After the filing of the suit, the Council revisited this issue. Based upon the recommendations of the City Attorney, a new ordinance was passed, repealing Ordinance #2372, and a further ordinance, #2381, was introduced. The latter ordinance, in substantive part, was identical to the prior ordinance establishing the public safety department. However, the preamble and numerical designations were changed so as to read as follows:
ORDINANCE NO. 2381, C.S.
“AN ORDINANCE AMENDING CHAPTER 2 OF THE HAMMOND CODE OF ORDINANCES BY ADDING THERETO A NEW SECTION 2-33 CONCERNING THE CREATION OF A DEPARTMENT OF PUBLIC SAFETY.”
WHEREAS, it is in the best interest of the City of Hammond and its Citizens that an administrative reorganization be undertaken wherein a Department of Public Safety is created, which is to efficiently monitor, direct, and supervise both the Police and Fire Departments of the City of Hammond; and
WHEREAS, it is necessary that Chapter 2 of the Hammond Code of Ordinances be amended to accomplish said purpose.
NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF *1141 THE CITY OF HAMMOND, LOUISIANA AT THIS REGULAR SESSION HELD ON THE 18TH DAY OF APRIL, 1995:
That the Code of Ordinances, City of Hammond, Louisiana, is hereby amended by adding a section, to be numbered Section 2-33, which said section reads as follows:
SECTION 2-33 DEPARTMENT OF PUBLIC SAFETY
(A) As an administrative reorganization authorized under Section 4-10 of the Home Rule Charter for the City of Hammond, there is hereby created a Department of Public Safety ...
the remainder of which ordinance was identical to the original proposal from the Mayor and to the prior ordinance which had been adopted and then repealed.
In support of his contentions, Plaintiff called Art Thiel as a witness at the hearing on the preliminary injunction. The Court accepted Thiel as an expert in state and local government. Thiel testified that he had been involved in many instances with the adoption of home rule charters throughout the State. He stated that the language employed in the initial proposal and ordinance indicated that an amendment to the City Charter was being effectuated. In his opinion, once the original action was taken by the Council in the adoption of the ordinance, a referendum was mandated. Thiel further stated that the Council was powerless to subsequently repeal this ordinance, because a chain of events had been set in motion which could only be resolved through the referendum. Consequently, Thiel testified that the subsequent repeal and enactment of the new ordinance was without effect.
Significantly, however, Thiel testified that the creation of the department of public safety and the reorganization attempted by the Mayor and City Council would have been authorized as an (Line missing in original) as stated, based solely upon his interpretation of the language of the prior acts, referencing specific provisions of the Charter. A further question was raised as to the use of an ordinance to approve the Mayor’s proposal, Thiel indicating that this action was not necessary as a requirement to an administrative reorganization under Section 4-10, and therefore inferring that a charter amendment was undertaken.
Initially, this Court notes that Section 2-10 of the Charter, dealing with actions requiring an ordinance, has a catchall provision, which states: “Acts other than those referred to above may be done either by ordinance or by resolution”. Considering this language, this Court cannot conclude that the utilization of an ordinance to adopt the Mayor’s proposal necessarily signified an intention to or result of amendment to the City Charter.
On the contrary, while the initial proposal from the Mayor does state that it is “Under Section 4-04”, it further clearly states that it is proposed as an administrative reorganization under Section 4-10. The minutes of the January 17 council meeting again state that the action was proposed as an administrative reorganization under Section 4-10. The discussion noted at that meeting specifically addresses whether the intent was to amend the Charter, and the indication is that the action was understood as an administrative reorganization under Section 4-10. The public notice which was published calls the hearing for the purposed of a proposed administrative reorganization, and while is does state that it is “Under Section 4-04”, it goes on to state that it is conducted under the provisions of Section 4-10.
The initial ordinance, # 2372, is admittedly drawn inartfully. Reference is made to establishing a Public Safety Department and sub-departments of Police and Fire, and it is labeled as 4-04, and states that it is under Article IV of the Home Rule Charter. However, the basic executive branch of the city government is outlined in this section of the Charter, with the duties and responsibilities of the various departments. It is logical to associate the proposed reorganization with reference to those departments set up under this section of the Charter, without necessarily reaching the conclusion that a charter amendment was being effectuated. This is particularly true where the charter itself grants the Council the ability to make such a reorganization without the (Line missing in *1142 original) in the executive branch of government without the necessity of a time consuming and expensive public referendum each time such action was contemplated. When the original City Charter was adopted by the citizens of Hammond, the power was given to the Council for such reorganization without charter amendments.
This Court finds the construction of events testified to by Mr. Thiel to be hyper-technical, in view of the plain expressions of intent to reorganize the executive branch under the specific provisions of the Charter referred to. Section 8-07 of the Charter provides that it is to be liberally construed in aid of its declared intent. The powers of administrative reorganization are specifically declared. The Court cannot accept the strict, narrow construction placed upon the actions of the City Council ascribed by Plaintiff and his expert witness.
Accordingly, the Court will deny the preliminary injunction sought by Plaintiff.
Amite, Louisiana, this 25th day of May, 1995.
/s/ Robert H. Morrison, III Robert H. Morrison, III Judge, Division “C”
Please send copies and notice of judgment to:
Ossie Brown Iddo Pittman Thomas Anderson