# Supreme Court of Louisiana

The Opinions handed down on the **27th day of June, 2018**, are as follows:

**BY CLARK, J.**:

2017-C-1811     WARREN MONTGOMERY, IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR ST. TAMMANY PARISH v. ST. TAMMANY PARISH GOVERNMENT, BY AND THROUGH THE ST. TAMMANY PARISH COUNCIL; AND PATRICIA "PAT" BRISTER, IN HER OFFICIAL CAPACITY AS PARISH PRESIDENT (Parish of St. Tammany)

We granted writ of certiorari in this case to determine whether the lower courts erred in finding that the St. Tammany Parish District Attorney is not legally obligated and entitled to serve as legal adviser to the St. Tammany Parish Council, Parish President and all departments, offices and agencies, and represent the Parish government in legal proceedings. For the reasons that follow, we find that the lower courts did, in fact, err, and we reverse the trial court's grant of the St. Tammany Parish Government's Motion for Summary Judgment. Furthermore, finding that there is no genuine issue of material fact that the Louisiana Constitution, the laws of the State, and the St. Tammany Parish Charter mandate that Applicant is the general attorney for St. Tammany Parish, we grant the St. Tammany Parish District Attorney's Motion for Summary Judgment.

REVERSED AND RENDERED.

Retired Judge Michael Kirby, assigned as Justice ad hoc, sitting for Guidry, J., recused.

GUIDRY, J., recused.
HUGHES, J., concurs and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2017-C-1811

WARREN MONTGOMERY, IN HIS OFFICIAL CAPACITY AS
DISTRICT ATTORNEY FOR ST. TAMMANY PARISH

VERSUS

ST. TAMMANY PARISH GOVERNMENT, BY AND THROUGH THE ST.
TAMMANY PARISH COUNCIL; AND PATRICIA "PAT" BRISTER, IN
HER OFFICIAL CAPACITY AS PARISH PRESIDENT

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF ST. TAMMANY

**CLARK, Justice***

We granted writ of certiorari in this case to determine whether the lower courts erred in finding that the St. Tammany Parish District Attorney is not legally obligated and entitled to serve as "legal adviser to the [Parish C]ouncil, [Parish P]resident and all departments, offices and agencies, and represent the Parish government in legal proceedings."[1] For the reasons that follow, we find that the lower courts did, in fact, err, and we reverse the trial court's grant of Respondent's Motion for Summary Judgment. Furthermore, finding that there is no genuine issue of material fact that the Louisiana Constitution, the laws of the State, and the St. Tammany Parish Charter mandate that Applicant is the general attorney for St. Tammany Parish, we grant Applicant's Motion for Summary Judgment.

**FACTS AND PROCEDURAL HISTORY**

On April 11, 2016, Applicant, Warren Montgomery, in his official capacity as District Attorney for St. Tammany Parish, filed suit against the St. Tammany Parish Government by and through the St. Tammany Parish Council, and Patricia

---

* Retired Judge Michael E. Kirby assigned as Justice ad hoc, sitting for Guidry, J., recused.

[1] St. Tammany Parish Home Rule Charter, Section 4-03A.

1

"Pat" Brister in her official capacity as Parish President (collectively "Respondents"). Applicant sought declaratory relief to determine whether the District Attorney is legally obligated and entitled to serve as the legal advisor to, and litigation counsel for, Respondents and whether Respondents' operation of an independent legal department of St. Tammany Parish is contrary to law. Applicant also sought preliminary and permanent injunctive relief consistent with the requested declaratory relief.

Respondents filed dilatory exceptions of prematurity and unauthorized use of summary proceeding, as well as peremptory exceptions of no cause of action and no right of action. Respondents also answered the petition by denying Applicant's claims and asserting several affirmative defenses. In the same pleading, Respondents filed a reconventional demand for declaratory relief that La. R.S. 42:261-263, La. R.S. 16:2 and Section 4-03 (A) of the St. Tammany Parish Home Rule Charter were unconstitutional.

The parties briefed the issues, and after a hearing, the trial court denied Respondents' exceptions of no cause of action and no right of action, but reserved Respondents' right to re-urge those exceptions later. The court granted the Respondents' exceptions of prematurity and improper use of summary proceeding. The court also granted the exception of prematurity as to the claim for mandatory injunctive relief and dismissed that claim without prejudice. The parties then conducted limited written discovery.

Thereafter, in August and September 2016, the St. Tammany Parish Council adopted two ordinances (the "Challenged Ordinances") that changed the nature of the legal representation of the Parish. As a result, Respondents filed an amended answer and supplemental peremptory exception of no cause of action, contending that the new Challenged Ordinances mooted Applicant's claims.

2

Although the matter was scheduled for trial, the parties suggested, and the trial court allowed, the filing of cross motions for summary judgment. On September 12, 2016, the trial court heard Respondents' supplemental peremptory exception of no cause of action and the cross motions for summary judgment. The trial court took the matter under advisement, and then rendered a Judgment and issued Reasons for Judgment on September 18, 2016, denying Respondents' Supplemental Exception of No Cause of Action, denying Applicant's Motion for Summary Judgment, and granting Respondents' cross Joint Motion for Summary Judgment.

In those Reasons for Judgment, the trial court stated, in pertinent part:

[T]he above ordinances [Ordinance Calendar Nos. 5638 and 5644] are determinative of this matter. The Defendants wish to continue autonomously structuring, organizing and managing the legal staff as it has for the past ten years. Parish officials do not wish to relinquish their right to choose who represents or advises them in legal matters, and rely solely and exclusively on the District Attorney's office. The ordinances make that clear. The substance and passage of the ordinances are within authority granted to Defendants under the Charter and applicable law and are binding.

On a more practical note, there is obvious concern about the ability of the District Attorney's office and parish government officials to work together as a cohesive force for the betterment of the people of St. Tammany Parish after this lawsuit if the Parish were forced to accept the District Attorney as sole legal representative. With the filing of this action, the District Attorney has taken on an adversarial position to the Parish Council and the Parish President that presents a conflict of interest, not only in this current action but quite possibly in future actions. Disharmony and distrust would likely be the natural consequence of these proceedings putting a burden on both parties that would only make governing the Parish more difficult, and would not serve the citizens of St. Tammany Parish well.

Mr. Montgomery as the Plaintiff would bear the burden of proof at a trial on the merits. To prevail, he must show that the St. Tammany Parish government is operating a legal department that is in contravention of law and the Charter, and further that it [sic] the parish government is preventing him from performing his duties and exercising his power as the duly elected District Attorney. Given the ability of a local government to opt out of the statutory scheme set forth in La. R.S. 42:261 as provided for in [La.] R.S. 16:2, the rights and powers set forth in the Home Rule Charter, and the two pertinent

3

ordinances passed within the power and authority of the Council, the Court finds that Mr. Montgomery will be unable to meet that burden.[2]

The trial court also found that "it is unnecessary to examine the constitutional claims for the disposition of this matter."[3]

On November 15, 2016, Applicant appealed this decision to the Court of Appeal, First Circuit. After briefing and oral argument, on September 26, 2017, the Court of Appeal affirmed the trial court's judgment, albeit with somewhat different reasoning. *Montgomery v. St. Tammany Par. Gov't by & through St. Tammany Par. Council*, 2017-0136 (La.App. 1 Cir. 9/26/17), 232 So.3d 652. The Court of Appeal found, in pertinent part, that:

> In this case, as in *Devall* [*v. Depaula*, 96-1067 (La. App. 1 Cir. 5/9/97), 694 So.2d 1137], the Parish President and Council have reorganized the local government pursuant to the Home Rule Charter. The St. Tammany Parish Home Rule Charter, Section 4–12, gives the Council and the President the power to create, change, alter, consolidate, or abolish Parish departments, including to reallocate functions, powers, duties, and responsibilities of positions in such departments. St. Tammany Parish Home Rule Charter Section 4–03, providing that the district attorney shall serve as legal advisor to the council, president and all departments, offices and agencies and represent the Parish government in legal proceedings, must be read and construed within the context of the entirety of the Home Rule Charter and the powers granted to the STPG, including Section 4–12, which provides for reorganization of the parish government.
>
> Further, while Section 4–03(A) of the St. Tammany Parish Home Rule Charter states that the District Attorney "shall" serve as legal advisor, and "shall" is mandatory pursuant La. R.S. 1:3, the St. Tammany Parish Home Rule Charter does not state that the District Attorney is the "sole" or "exclusive" general legal advisor to the S[t.] T[ammany] P[arish] G[overnment]. Likewise, the St. Tammany Parish Home Rule Charter does not have any express limitation on the Council's or Parish President's right to employ their own counsel to provide general legal advice and services. The limitation is upon the hiring of counsel that is special or "outside" counsel, which can only be hired through a written contract approved by a majority of the council.
>
> While Mr. Montgomery asserts that the ruling of the district court allows the S[t.] T[ammany] P[arish] G[overnment] to decide when and under what circumstances it can compel the District Attorney to represent it, we find that the fact that the S[t.] T[ammany] P[arish]

---

[2] Trial Court Reasons for Judgment, at 10-11. [Rec. at 684-685].
[3] Trial Court Reasons for Judgment, at 2, n. 1. [Rec. at 676].

4

G[overnment] maintains a separate Legal Department to advise it on civil legal matters does not mean that the District Attorney has been compelled to do anything.

We find no genuine issue of material fact that Mr. Montgomery will be unable to meet his burden to show that the defendants are operating a civil legal department that is in violation of the law, or to show that the defendants are preventing him from performing his duties as district attorney.

*Montgomery v. St. Tammany Par. Gov't by & through St. Tammany Par. Council*, 2017-0136, 13-14 (La.App. 1 Cir. 9/26/17), 232 So.3d 652, 660–61.

Thereafter, Applicant timely filed his writ application to this Court. On January 29, 2018, this Court granted the writ and docketed the matter for the Court's consideration. *Montgomery*, 2017-1811 (La. 1/29/18), 233 So.3d at 609.

## LAW AND ANALYSIS

This case involves interpreting the Constitution, statutes, and a home rule charter. As we have stated many times before:

> The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the Legislature to enact the law. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. Legislation is the solemn expression of legislative will, and therefore, interpretation of a law involves primarily a search for the Legislature's intent.

> When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the Legislature. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the words of law must be given their generally prevailing meaning. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole, and laws on the same subject matter must be interpreted in reference to each other.

> The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the Legislature in enacting it. The statute must, therefore, be applied and interpreted in a manner, which is consistent with logic and the presumed fair purpose and intention of the Legislature in passing it.

5

> This is because the rules of statutory construction require that the general intent and purpose of the Legislature in enacting the law must, if possible, be given effect Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. It is likewise presumed that the intention of the legislative branch is to achieve a consistent body of law. [Internal citations omitted].

*Pumphrey v. City of New Orleans*, 2005-0979 (La. 4/4/06, 10–11), 925 So.2d 1202, 1209–10. By analogy, similar rules apply to interpreting the Constitution and home rule charter. *E. Baton Rouge Par. Sch. Bd. v. Foster*, 2002-2799 (La. 6/6/03, 16), 851 So.2d 985, 996.

The Louisiana Constitution is the supreme law of the State of Louisiana, to which all legislative acts must yield. *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 2007-2371 (La. 7/1/08, 22), 998 So.2d 16, 31–32, *amended on reh'g* Sept. 19, 2008). As pertains to this matter, the Constitution states:

> Except as otherwise provided by this constitution, a district attorney, or his designated assistant, shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand jury in his district, and be the legal advisor to the grand jury. He shall perform other duties provided by law.

La. Const. art. V, § 26(B). As authorized by the Constitution, the legislature has assigned other duties to district attorneys. These duties require district attorneys to be the regular attorneys for parish governments within their districts.[4, 5] Parishes which have adopted a home rule charter, as St. Tammany Parish has, may employ a

---

[4] The district attorneys of the several judicial districts of Louisiana, other than the parish of Orleans, shall ex officio be the regular attorneys and counsel for the police juries, parish school boards, and city school boards within their respective districts . . . La. R.S. 16:2(A)

[5] [T]he district attorneys of the several judicial districts other than the parish of Orleans shall, ex officio and without extra compensation, general or special, be the regular attorneys and counsel for the parish governing authorities . . . within their respective districts . . . La. R.S. 42:261(A)

parish attorney or special counsel, rather than using the services or the district attorney as its regular attorney, but only if the charter so provides.[6]

Just as the Constitution is the supreme law of the state, home rule charters are the supreme law of home rule charter jurisdictions, subordinate only to the constitution and constitutionally allowed legislation. *See Miller v. Oubre*, 96-2022 (La. 10/15/96, 9–10), 682 So.2d 231, 236 ("The power of a home rule government within its jurisdiction is as broad as that of the state, except when limited by the constitution, laws permitted by the constitution, or its own home rule charter."). *See also, Morial v. Smith & Wesson Corp.*, 2000-1132 (La. 4/3/01, 16), 785 So.2d 1, 14 ("[T]his court has recognized that, in affairs of local concern, a home rule charter government possesses powers which within its jurisdiction are as broad as that of the state, except when limited by the constitution, laws permitted by the constitution, or its own home rule charter.").

The St. Tammany Parish Home Rule Charter states:

> Except as otherwise provided by this charter the Parish government shall continue to have all the powers, rights, privileges, immunities and authority heretofore possessed by St. Tammany Parish under the laws of the state. The government shall have and exercise such other powers, rights, privileges, immunities, authority and functions not inconsistent with this charter as may be conferred on or granted to a local governmental subdivision by the constitution and general laws of the state, and more specifically, the government shall have and is hereby granted the right and authority to exercise any power and perform any function necessary, requisite or proper for the management of its affairs, not denied by this charter, or by general state law, or inconsistent with the constitution.

---

[6] Where a parish has adopted a charter for local self-government or other home rule charter and such charter provides for the employment of a parish attorney or a special attorney or counsel, the district attorney shall not be the regular attorney or counsel for such governing authority.

* * *

[I]n a parish which has adopted a charter for local self-government or other home rule charter, if the charter so provides, the parish governing authority may retain or employ any attorney or counsel to represent it generally or retain or employ any special attorney or counsel to represent it in any special matter without the approval of the attorney general. La. R.S. 16:2(D).

St. Tammany Par. Home Rule Charter, §1-04. The Charter, therefore, recognizes the supremacy of the Constitution and the laws of the State. Further, the Charter establishes:

A. The district attorney of the judicial district serving St. Tammany Parish shall serve as legal adviser to the council, president and all departments, offices and agencies and represent the Parish government in legal proceedings.

B. No special legal counsel shall be retained by the Parish government except by written contract for a specific purpose approved by the favorable vote of a majority of the authorized membership of the council. Such authorization shall specify the compensation, if any, to be paid for such services.

St. Tammany Par. Home Rule Charter, §4-03, Legal Department. Applying the clear and unambiguous language of the Charter, read *in pari materia* with La. R.S. 16:2 and 42:261, the district attorney is the legal advisor to the Parish Government and is to represent the Parish in legal proceedings.

Respondents make several arguments in opposition to this finding. First, Respondents argue that the Constitution and above statutes allow home rule charter governments to opt out of having the district attorney be the regular attorney for the governing authority. Although Respondents are correct in that respect, the St. Tammany Parish Home Rule Charter does not "opt out" of such representation. In fact, the Charter specifically states that the District Attorney is the "adviser to the council, president and all departments, offices and agencies," and is to "represent the Parish government in legal proceedings."

Respondents further argue that La. R.S. 16:2(D) gives three different mechanisms by which a home rule charter government may opt out: (1) by hiring a parish attorney, (2) by hiring a special attorney, or (3) by hiring counsel. Under each of these three situations, Respondents claim a parish government should be deemed to have opted out. Respondents ignore, however, the words of the Charter, which anoints the District Attorney as the legal advisor to the government and the person

8

who represents the government in legal proceedings. Further, the Charter authorizes the hiring of special legal counsel only for specific purposes and not for general purposes. Respondents also disregard the second paragraph of La. R.S. 16:2(D), which allows a parish to retain counsel to represent it generally only if the charter so provides. The St. Tammany Parish Charter does not provide for general representation by any attorney other than the District Attorney. As the Charter's language makes clear, the District Attorney is the general attorney for the Parish government, although special counsel may be hired for specific purposes. Respondents' arguments would reverse that, enabling the Parish to retain special counsel to be the general attorney for the Parish, while the District Attorney would handle only specific cases upon request of the Parish Government. The language relied on by Respondents cannot be considered an "opt out." Thus, this argument is without merit.

Next, Respondents argue that by including a section in the Charter entitled "Legal Department," the Charter authorizes the Parish President to appoint a director and employees to staff the department, as authorized by the Charter's Section 3-09,[7] and to supervise and control the department, as authorized by Section 3-01.[8] To the contrary, however, Section 4-03 effectively establishes the District Attorney as the

---

[7] A. The president as chief executive officer of the Parish government shall have the following powers and duties:

\* \* \*

(2) Appoint and suspend or remove for just cause all Parish government employees and appointive administrative officers provided for by or under this charter, except as otherwise provided by this charter or other personnel rules adopted pursuant to this charter. The president may authorize any administrative officer who is subject to the president's direction and supervision to exercise these powers with respect to subordinates in the officer's department, office or agency.

(3) Direct and supervise the administration of all departments, offices and agencies of the Parish government, except as otherwise provided by this charter. St. Tammany Par. Home Rule Charter, §3-09.

[8] The president shall be the chief executive officer of the Parish government and shall exercise general executive and administrative authority over all departments, offices and agencies of the Parish government, except as otherwise provided by this charter. St. Tammany Par. Home Rule Charter, §3-01.

department head, designating the District Attorney as the "legal advisor" and representative of the Parish in legal proceedings. Furthermore, the Constitution does not allow a home rule charter to contain any provision which affects the office of district attorney inconsistent with the Constitution or law. La. Const. art. VI, §5(G).

Next, Respondents argue that the Charter's Section 4-01[9] (along with Sections 3-01 and 3-09) allows the Parish President to appoint the Director of the Legal Department. Section 4.01 provides that the Parish President may appoint department directors "except as otherwise provided by this charter," but the Charter effectively establishes the District Attorney as the Director of the Legal Department. As Respondents recognize above, La. R.S. 16:2 provides the mechanism by which a charter government may opt out of using the district attorney as its general attorney. Presidential appointment is not included in the mechanism.

Respondents next argue that Section 4-12[10] of the Charter allows the President and Parish Council to create, change, alter, consolidate, or abolish Parish departments, including the power to reallocate the functions, powers, duties and responsibilities of positions in such departments. Respondents attempted to

---

[9] A. Except as otherwise provided by this charter all departments, offices and agencies shall be under the direction and supervision of the president. The directors of all departments and agencies created by or under this charter shall be appointed by the president, subject to council approval, and shall serve at the pleasure of the president, except as otherwise provided by this charter. St. Tammany Par. Home Rule Charter, §4-01.

[10] A. The president may propose to the council the creation, change, alteration, consolidation or abolition of Parish departments, offices and agencies and the reallocation of the functions, powers, duties and responsibilities of such departments, offices or agencies, including those provided for in this charter.

B. Upon receipt of the president's proposed plan of reorganization, the presiding officer of the council shall cause to be introduced an ordinance to implement the proposed reorganization plan. The ordinance shall follow the same procedure as provided in the section on "Ordinances in General" of this charter.

C. The reorganization plan submitted by the president shall become effective if the council fails to act on the proposed reorganization within ninety (90) days of its submission to the council. . St. Tammany Par. Home Rule Charter, §4-12.

accomplish this reorganization by passing the Challenged Ordinances. The

Challenged ordinances provide, in pertinent part:

> c. The Council shall appoint one (1) or more attorneys as necessary Council staff members and who shall serve at the pleasure of the Council. The Council Attorney(s) shall (1) serve as legal advisor(s) to the Council, respective staff members, and boards and commissions established by Council, all as directed by the Council; (2) represent and/or direct representation for the Council in conjunction with Parish Government in legal proceedings; (3) represent boards and commissions established by the Council and as directed by the Council; and (4) co-administer Parish litigation with Parish President appointed attorneys and jointly represent the Parish Government with Parish President attorneys.

St. Tammany Parish Code of Ordinances, Sec. 2-035.00.

> The general duties and responsibilities of each office and/or department herein shall be as follows:

> A. To perform such services as is necessary to carry out its legislative functions.

> B. To ensure the safety, health and well-being of the citizens of this Parish.

> C. To be responsive and responsible to the needs of the citizens of St. Tammany Parish.

> D. To perform other such activities not enumerated herein as directed by the President, Chief Administrative officer and/or Deputy Chief Administrative Officer(s).

> The further duties of these offices, agencies and/or departments shall be as follows:
>
> * * *
>
> 8. The Legal Department. The President shall appoint an Executive Counsel who shall serve at the pleasure of the President. The Executive Counsel shall: (1) subject to the Council's approval pursuant to Home Rule Charter Section 4-01(A), be the Director of the Legal Department; (2) direct the Legal Department and its respective staff members, including attorneys; (3) serve as legal adviser to the President, parish employees and all departments comprising Parish Administration; all as directed by the Parish President; (4) represent and/or direct representation for the Parish President and Parish Administration in conjunction with Parish Government in legal proceedings; and (5) coadminister with Council Attorneys all legal proceedings and litigation involving Parish Government and jointly represent the Parish Government with Council Attorneys in such proceedings. All attorneys in the Legal Department shall be Parish President appointed attorneys

11

> subject to Section 3-09 of the Home Rule Charter. The Legal Department shall include the Office of Risk Management. Said duties shall include, but not be limited to, any and all actions necessary to carry out the functions of the Department.
>
> Pursuant to Home Rule Charter Section 4-03(A), the District Attorney of the judicial district serving St. Tammany Parish shall, upon the request of the Parish Government: (a) serve as legal adviser to any departments, offices, and agencies of the Parish Government, and (b) represent the Parish Government in legal proceedings; provided, however, that the District Attorney has no conflict of interest with respect to any such matter for which such a request is made.
> Nothing herein shall alter or change the procedure for retaining special legal counsel as set forth in Home Rule Charter Section 4-03(B).

St. Tammany Parish Code of Ordinances, Sec. 2-092.00.

In support of this argument, Respondents cite to *Devall v. Depaula*, 1996-1067 (La. App. 1 Cir. 5/9/97), 694 So.2d 1137. In that case, the mayor of the City of Hammond, a charter city, proposed to change the police chief's role with respect to the police department, which was set forth in the city's charter, and to reallocate certain of the chief's functions to a newly-created administrative position pursuant to Section 4-10 of the Hammond City Charter.[11] *Devall*, 694 So.2d at 1139. The court of appeal concluded that the charter gave the mayor the power to propose the change, and the council the power to implement it by ordinance pursuant to the reorganization powers "without the necessity of a time consuming and expensive

---

[11] A. The mayor shall have the right as chief executive officer to propose to the council the creation, change, alteration, combination or abolition of City departments, offices or agencies and/or the reallocation of the functions, powers, duties, and responsibilities of such agencies including those provided in this charter.

B. At the meeting of the council at which the reorganization plan is submitted, the council shall order a public hearing on the plan to be held within thirty (30) days. The council shall cause to be published in the official journal at least ten (10) days prior to the date of such hearing, the time and place thereof, a general summary of the reorganization plan and the times and places where copies of the proposed reorganization plan are available for public inspection. At the time and place so advertised, the council shall hold a public hearing on the reorganization plan as submitted.

C. The council shall within sixty (60) days following the date of the public hearing either approve or disapprove, but not amend, the proposed reorganization plan. Should the council fail to act within the prescribed time, the plan shall be deemed approved. City of Hammond Home Rule Charter, §4-10.

public referendum each time such action was contemplated." *Devall*, 694 So. 2d at 1142.

The situation in *Devall* is distinguishable from that before us now. There, the charter gave the mayor and city council the power to reorganize city departments, including those created by the charter, which the city did by passing ordinances reorganizing the police department.

Here, likewise, the Parish President and Parish Council passed the Challenged Ordinances in accordance with Section 4-12 of the St. Tammany Parish Charter in an attempt to reorganize the Legal Department of the Parish. In this case, though, rather than reorganizing a department created exclusively by the Charter, the Parish Legal Department is a creation of not only the Charter, but of the Constitution and the statutory laws of the State, which name the District Attorney as the general attorney for the Parish, unless the Parish opts out of such an arrangement. As discussed above, the Charter does not indicate the Parish has opted out. Because the Charter does not specify that the Parish has opted out, in order to do so, the Charter must be amended in accordance with Section 7-01[12] in order for the Parish to opt out of such representation.

Additionally, Respondents argue that the Louisiana Rules for Professional Conduct prohibit the District Attorney from representing the Parish Government, citing to *Succession of Wallace*, 574 So.2d 348 (La. 1991). In *Wallace*, this Court examined the constitutionality of La. R.S. 9:2448, which required the executor of a

---

[12] This provision provides in pertinent part:

A. Proposals to amend or repeal this charter may be made by a two-thirds vote of the authorized membership of the council or by petition signed by not less than twenty (20) percent of the total number of registered voters of the Parish. A petition shall contain the full text of the proposed amendment, amendments, or repeal of the charter. . .

decedent's estate to accept the attorney designated in the testator's will as the counsel for the executor and the estate, unless there was just cause to dismiss the attorney.

In making its determination, the Court stated:

> This court has exclusive and plenary power to define and regulate all facets of the practice of law, including the admission of attorneys to the bar, the professional responsibility and conduct of lawyers, the discipline, suspension and disbarment of lawyers, and the client-attorney relationship. The sources of this power are this court's inherent judicial power emanating from the constitutional separation of powers. The standards governing the conduct of attorneys by rules of this court unquestionably have the force and effect of substantive law.
>
> Conversely, the legislature cannot enact laws defining or regulating the practice of law in any aspect without this court's approval or acquiescence because that power properly belongs to this court and is reserved for it by the constitutional separation of powers. Accordingly, a legislative act purporting to regulate the practice of law has commendatory effect only until it is approved by this court as a provision in aid of its inherent judicial power. This court will ratify legislative acts that are useful or necessary to the exercise of its inherent judicial power, but it will strike down statutes which tend to impede or frustrate its authority.

*Wallace*, 574 So.2d at 350.

Based on the above tenets, the Court found that the statute did interfere with its exclusive and plenary power to define and regulate all facets of the practice of law granted to the Court by the Constitution. In support of its reasoning, the *Wallace* court recognized:

> [A]ppointments [of attorneys in a testator's will] cause serious ethical concerns. Any knowledgeable lawyer knows that there are instances in which attorneys have improperly solicited future business by suggesting such a designation to the testator who in many instances does not realize that he is involved in a solicitation or a business transaction with the attorney or that he is in effect making a testamentary gift to the attorney. In some instances the provision is simply inserted into the will without specifically discussing the designation with the testator. Of course, the actual facts in a particular situation are virtually impossible to ascertain because the testator is dead by the time the issue is raised and the attorney-draftsman is usually the only other witness to the transaction. Moreover, the lawyer's self-interest in securing lucrative positions under the will creates a disincentive to advise the client about alternative methods of wealth transfer-such as outright gifts-that do not require the additional expenses of executors, trustees, and lawyers. Most egregious is the fact

14

that the executor-designee and members of the testator's family may be misled into believing that they must retain the services of the attorney named in the will. Thus, in the case in which the testator had no genuine preference in the matter, but simply acceded to the provision inserted by the drafting attorney in the belief that it was routine boilerplate, the attorney's will is the only one which is truly implemented.

*Wallace*, 574 So.2d at 354.

Here, the dangers noted by the *Wallace* court are inapplicable. The District Attorney has not inserted himself into parish governments unbeknownst to the remainder of the government. Rather, he is an elected official and his duties are assigned by the Constitution and statutory law. Neither is the District Attorney improperly soliciting future business – again, the business of representing parish governments is assigned to him by the Constitution and statutory law. Nor has the District Attorney inserted himself into representing the Parish Government, nor does he have disincentives to advise his clients of alternative methods of wealth transfer, nor has the Parish Government been misled into believing that it must retain the services of the District Attorney. Indeed, it is not the will of the District Attorney which is being implemented, but the will of the citizens of the State, through the Constitution and the laws of the State, and the citizens of St. Tammany Parish, through the St. Tammany Parish Charter.

Finally, the *Wallace* court found that the statute unconstitutionally interfered with this Court's exclusive and plenary power to define and regulate all facets of the practice of law by leaving clients no recourse in discharging their attorney with or without cause. *Wallace*, 574 So.2d at 355. Here, in contrast, the Constitution and statutes give the Parish Government a method to discharge its attorney from particular civil matters with or without cause – by amending the Charter in accordance with La. Const. art. VI, § 5 and opting out of representation by the District Attorney. These statutes assigning district attorneys as general attorneys for

15

the parishes do not unconstitutionally impede or frustrate this Court's exclusive and plenary power to define and regulate all facets of the practice of law.

Next, Respondents argue that ethical considerations bar their representation by the District Attorney. Because the President and Council are not always completely aligned, they argue, they need separate counsel. Further, they argue, the District Attorney may have loyalties to third parties which would impede his representation of the Parish Government. As stated in the dissent in the court of appeal, these situations are hypotheticals. Furthermore, the District Attorney is subject to the Code of Professional Responsibilities if conflict arises. If such a specific situation arises, the Charter authorizes the Parish to hire special counsel to handle that specific purpose.

Finally, in the alternative, Respondents complain that Section 4-03(A) (establishing the Parish Legal Department), La. R.S. 16:2 (describing "Duty of district attorney to act as counsel for parish boards and commissions") and La. R.S. 42:261 (also describing "District attorneys; counsel for boards and commissions") are unconstitutional. More specifically, with regard to Section 4-03(A), Respondents urge that the section violates the prohibitions contained in Article VI, § 5(E)[13] and 6[14] of the State Constitution. With respect to La. R.S. 16:2 and 42:261, Respondents argue that the statutes are unconstitutional special laws.

As to Section 4-03, Respondents claim that the section interferes with their "exercise of any power and performance of any function necessary, requisite, or proper for the management of [their] affairs, not denied by general law or

---

[13] (E) Structure and Organization; Powers; Functions. A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution.

[14] The legislature shall enact no law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision which operates under a home rule charter.

inconsistent with this constitution." La. Const. art. VI, § 5 (E). They further argue that the section "changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision which operates under a home rule charter." La. Const. art. VI, § 6.

To the contrary, however, Section 4-03 does not interfere with St. Tammany Parish's "exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs" in violation of Article V § 5 (E). Instead, Section 4-03 establishes, as authorized in the Constitution, a portion of the "structure and organization" of the Parish Government, which was approved by the voters of St. Tammany Parish when the Charter was established. As we recognized above, the Charter contains the method for changing this particular "structure and organization" of the Parish Government, if that is what the voters desire. Further, it was not the legislature that enacted Section 4-03, but, instead, the voters of St. Tammany Parish. Therefore, Section 4-03 does not run afoul of Article VI, § 6.

Next, Respondents argue that La. R.S. 16:2 and 42:261 violate La. Const. art. Article III, § 12,[15] which prohibits the legislature from passing a special law concerning civil actions. We find this line of argument not only unavailing as a matter of law, but it is also an example of a failed "end run" past the Respondents' unsuccessful effort to have their electorate amend their home rule charter to obtain the relief Respondents now seek from this court.

Even if we accepted, for the sake of argument, that there was some constitutional infirmity with these statutes, Respondents would still be required to amend their home rule charter to obtain the result they seek. Stated differently,

---

[15] Prohibitions. Except as otherwise provided in this constitution, the legislature shall not pass a local or special law . . .

17

because Respondent's home rule charter requires the District Attorney to serve as Respondents' general legal representative, regardless of whether the statutes are constitutional or not, the charter would have to be amended to alter the District Attorney's role. However, "[w]e have consistently held that courts should refrain from reaching or determining the constitutionality of legislation unless, in the context of a particular case, the resolution of this is essential to the decision of the case or controversy." *See Cat's Meow, Inc. v. City of New Orleans Through Dep't of Fin.*, 98-0601 pp. 16-17 (La. 10/20/98), 720 So.2d 1186, 1199. As just demonstrated, even if we found the complained-of statutes to be unconstitutional, Respondents still could not alter the District Attorney's role without amending their Charter. Thus, resolution of the question of whether the complained-of statutes are unconstitutional as local or special laws is not necessary in this case, and consistent with our longstanding practice, we decline to pass judgment on the constitutionality of legislation when we are not required to do so. *See Cat's Meow*, 720 So.2d at 1199.

## CONCLUSION

For the above and foregoing reasons, we reverse the judgment that granted summary judgment in favor of the St. Tammany Parish Government and denied the District Attorney's cross-motion for summary judgment. Furthermore, we render summary judgment in favor of the District Attorney for St. Tammany Parish. All costs associated with this appeal shall be assessed against the St. Tammany Parish Government.

**REVERSED AND RENDERED.**

18

# SUPREME COURT OF LOUISIANA

## No. 2017-C-1811

## WARREN MONTGOMERY, IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR ST. TAMMANY PARISH

## VERSUS

## ST. TAMMANY PARISH GOVERNMENT, BY AND THROUGH THE ST. TAMMANY PARISH COUNCIL; AND PATRICIA "PAT" BRISTER, IN HER OFFICIAL CAPACITY AS PARISH PRESIDENT

## ON WRIT OF CERTIORARI T OTHE COURT OF APPEAL, FIRST CIRCUIT, PARISH OF ST. TAMMANY

**Hughes, J., concurring.**

No one contests that the District Attorney has complete control of criminal matters and is the *general* counsel for parish government. However, it is absurd to think that the parish cannot retain separate counsel in specific civil matters, especially when the district attorney may be the opposing party. The mechanism here has been confusing, but I see no reason why the parish cannot vote to hire separate counsel in specific matters.